Pamela B. STUART, Appellant,

v.

Barbara J. WALKER, Appellee,

and

District of Columbia, Intervenor.

No. 09–CV–900.

District of Columbia Court of Appeals.

Argued Jan. 13, 2010.

Decided Oct. 28, 2010.

Pamela B. Stuart, pro se.

Barbara J. Walker, pro se.

James C. McKay, Jr., Senior Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General for the District of Columbia, and Donna M. Murasky, Deputy Solicitor General for the District of Columbia, were on the brief, for the intervenor.

Rachel Z. Stutz, with whom Anne Harkavy and Susan S. Friedman, Washington, DC, filed a brief as amicus curiae on behalf of The Attorney/Client Arbitration Board of the District of Columbia Bar.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and STEADMAN, Senior Judge.

WASHINGTON, Chief Judge:

Appellant Pamela Stuart brought this suit in Superior Court to recover attorney's fees from her former client, appellee Barbara Walker. Walker moved to compel arbitration of the case pursuant to District of Columbia Bar Rule XIII ("Rule XIII"), which mandates binding arbitration of all attorney-client fee disputes in the District of Columbia. The Superior Court granted the motion and stayed the case pending an arbitral judgment. Stuart then filed this appeal, in which the District of Columbia intervened as a party, from the order granting compelled arbitration and now argues that Rule XIII is unconstitutional and beyond the District of Columbia Court of Appeals' authority to promulgate. We do not reach the merits of Stuart's argument, however, because we do not have jurisdiction to hear this appeal as it was taken from a non-final order and, in all ways relevant to this appeal, our jurisdiction is limited to review of final orders of the Superior Court. *See* D.C.Code § 11–721(a)(1) (2001); and *American Fed'n of Gov't Employees,*

*AFL–CIO v. Koczak*, 439 A.2d 478, 480 (D.C.1981) ("An order to compel arbitration does not dispose of the entire case on the merits. Rather, ... such an order is ... unappealable."). Accordingly, we dismiss Stuart's appeal for lack of jurisdiction.

## I.

Section 11–721(a)(1) of the District of Columbia Court Reform and Procedure Act of 1970, Pub.L. 91–358, 84 Stat. 480 (1970), *recodified* D.C.Code § 11–721(a), provides that the District of Columbia Court of Appeals has jurisdiction over "all final orders and judgments of the Superior Court of the District of Columbia...." [1] In other words, our jurisdiction over matters emanating from the Superior Court generally is *limited* to the review of final orders of the Superior Court. *See, e.g., Evans v. Dreyfuss Bros., Inc.*, 971 A.2d 179, 185 (D.C.2009) (holding that we lacked jurisdiction to hear an appeal from an order effectively compelling arbitration because "any lack of finality is a bar to appellate review").

According to the Supreme Court, the "well-developed and long-standing" definition of a "final" order is "a decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (concluding that an appeal from an order compelling arbitration under the Federal Arbitration Act, when the underlying action is dismissed, is a final order). This court's

case law is in agreement; we have held that, as a "general rule[,] ... an order is final for purposes of appeal ... [when] it disposes of the entire case on the merits." *Crown Oil & Wax Co. of Delaware v. Safeco Ins. Co. of America*, 429 A.2d 1376, 1379 (D.C.1981); *see also Judith v. Graphic Comm'ns Int'l Union*, 727 A.2d 890, 892 (D.C.1999) (orders granting motions to compel arbitration are not final and appealable); *Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 720 (D.C.1995) (same); *Koczak, supra*, 439 A.2d at 480 (same). Accordingly, we have consistently held that "[a]n order to compel arbitration" is not a final appealable order because it "does not dispose of the entire case on the merits. Rather, the parties' rights and obligations are finally determined only after arbitration is had, or, if an arbitrator's award is challenged, after a court enters judgment upholding, modifying, or vacating an arbitrator's award." *Koczak, supra*, 439 A.2d at 480.

However, despite the fact that this court has consistently held that orders compelling arbitration are not final orders, Stuart and the District, relying on *Green Tree Financial Corp. v. Randolph, supra*, argue that such a conclusion is erroneous as a matter of law. They also contend that this court has jurisdiction to hear her appeal under D.C.Code § 16–4427(a) (2009), a recently enacted and retroactively applicable amendment to the District of Columbia Uniform Arbitration Act, § 16–4401 *et seq.* (2009) ("DCUAA"), that purports to make orders granting compelled arbitration ap-

---

1. D.C.Code § 11–721(a)(2) also provides for our review of certain non-final interlocutory orders, as enumerated, that are not at issue in this case. Additionally, under D.C.Code § 11–722, which is likewise not implicated in this case, "[t]he District of Columbia Court of Appeals [also] has jurisdiction ... to review orders and decisions of the ... [Mayor] ..., the District of Columbia Council, [and] any agency of the District ..., in accordance with the District of Columbia Administrative Procedure Act" ("DCAPA"), D.C.Code § 2–501 *et seq.* (1981).

pealable.[2] Yet, unless we conclude that an order compelling arbitration is a final order, and we cannot, the D.C. Council's enactment amending the DCUAA to make such orders reviewable on appeal exceeds the D.C. Council's authority because it violates § 602(a)(4) of the District of Columbia Self–Government and Governmental Reorganization Act, Pub.L. 93–198, 87 Stat. 774 (1973) ("Home Rule Act"),[3] by unlawfully expanding our jurisdiction to hear appeals over non-final orders of the Superior Court.

### A.

First, Stuart and the District's reliance on *Green Tree Financial Corp., supra,* for the proposition that orders granting compelled arbitration are final orders, is misplaced. In that case, the issue before the Supreme Court was whether the trial court's dismissal of a case with prejudice while also granting a motion to compel arbitration, as opposed to staying the case pending the outcome of the arbitration, was final for purposes of appellate review. *Green Tree Fin. Corp., supra,* 531 U.S. at 87, 121 S.Ct. 513. The Supreme Court concluded that because the order compelling arbitration also dismissed the underlying case, the order was a final appealable order in that case. However, the opinion also makes clear that "[h]ad the District Court entered a stay instead of a dismissal in th[at] case, that order *would not be*

*appealable." Id.* at 87 n. 2, 121 S.Ct. 513 (emphasis added).

Our own case law is in accord with the Supreme Court's opinion in *Green Tree Financial Corp.* For example, in *Koczak, supra,* we held that because "[a]n order to compel arbitration does not dispose of the entire case on the merits ... such an order is ... unappealable." 439 A.2d at 480. In fact, we have made it clear that it is only "where a trial court dismisse[s] a case with prejudice in addition to compelling arbitration ... [that] such an order is unambiguously final [because] ... the trial court has effectively prevented a plaintiff from litigating the issue in the future." *Keeton v. Wells Fargo Corp.,* 987 A.2d 1118, 1121 (D.C.2010) (footnotes omitted). Where a dismissal is ambiguous, however—*e.g.,* is not with prejudice—we have treated that dismissal as a stay in order to prevent the entering of a final appealable judgment until after arbitration is completed. *See Judith, supra,* 727 A.2d at 892 (concluding that while the dismissal was a final order, it should be treated as a stay pending the outcome of arbitration so as to avoid authorizing piecemeal appeals). *Cf. Green Tree Fin. Corp., supra,* 531 U.S. at 87, 121 S.Ct. 513.

In this case, the Superior Court did not dismiss Stuart's lawsuit, but stayed the suit after granting Walker's motion to compel arbitration. Therefore, consistent

---

**2.** D.C.Code § 16–4427(a) provides, in pertinent part, that "[a]n appeal may be taken from: (1) [a]n order denying *or granting* a motion to compel arbitration ...." (emphasis added).

**3.** Home Rule Act § 602(a)(4) provides:
The Council shall have no authority to pass any act contrary to the provisions of this Act except as specifically provided in this Act, or to—
    (4) enact any act, resolution, or rule with respect to any provision of title 11 of the

District of Columbia code (relating to organization and jurisdiction of the District of Columbia courts)....

When read in conjunction with the definition of our jurisdiction in D.C.Code § 11–721(a)(1) as being over "final orders," a plain reading of § 602(a)(4) of the Home Rule Act is that the D.C. Council cannot enact any legislation affecting the finality of orders for purposes of appealability to this court, or attempt to modify this court's jurisdiction in any other way.

with the Supreme Court's rationale in *Green Tree Financial Corp., supra,* and our opinions in the cases cited above, when, as here, the action is stayed pending the outcome of arbitration, there is no final order because no final judgment has been entered by the trial court and the party opposing arbitration retains the ability to challenge the arbitral award.

## B.

Next, Stuart and the District contend that enacting legislation to allow appeals from orders granting motions to compel arbitration is within the D.C. Council's authority and, therefore, the DCUAA amendment does not run afoul of § 602 of the Home Rule Act by altering our jurisdiction. In support of this contention, Stuart and the District rely on our decisions in *District of Columbia v. Greater Wash. Cent'l Labor Council,* 442 A.2d 110 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983), and *District of Columbia v. Sullivan,* 436 A.2d 364 (D.C.1981), for the proposition that the D.C. Council does have the authority to change what kinds of cases are directly appealable to this court and can do so without affecting our jurisdiction. However, both of these cases are readily distinguishable from the instant case.

In *Greater Washington Central Labor Council, supra,* we heard a challenge to D.C. Council legislation that provided for the enforcement of contested administrative private worker's compensation awards in Superior Court, with appeals to this court, on the grounds that the legislation violated the Home Rule Act by purporting to expand the jurisdiction of the District's courts. 442 A.2d at 117. The compensation awards, under the new legislation, were final judgments subject to approval by the Mayor of the District of Columbia. *See id.* We held that the legislation did not run afoul of the Home Rule Act because the Superior Court already had jurisdiction to enforce such compensation awards under its own broad jurisdiction over "any civil action or other matter (at law or in equity) brought in the District of Columbia." *Id.* (quoting *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979)); and *see* Home Rule Act § 431. Our own jurisdiction was likewise not affected because the Home Rule Act itself provided for the Court of Appeals' "review [of] orders and decisions of the Mayor, the Council, or any agency of the District," "to the extent provided by law...." Home Rule Act § 431(a), *recodified,* D.C.Code § 11–722 (2001). The "extent provided by law" is the extent provided for under the District of Columbia Administrative Procedure Act ("DCAPA"), D.C.Code § 2–501 *et seq.* (1981), which provides for our "[r]eview ... of final decisions relating to compensation orders rendered by the Mayor." *Greater Wash. Cent'l Labor Council, supra,* 442 A.2d at 118. "Accordingly, [we held that] this court will review compensation claims by virtue of its preexisting jurisdiction to review administrative proceedings." *Id.* In short, as the Home Rule Act itself provided for our review of the type of judgments at issue in that case, the legislation granting us that review under the DCAPA did not expand our jurisdiction, but rather fell within its established parameters.

Similarly, in *Sullivan, supra,* we upheld the legislative decriminalization of certain traffic offenses, which made them subject to administrative adjudication followed by our direct review rather than criminal prosecution in the Superior Court, because the new judicial review process did not violate the Home Rule Act. 436 A.2d at 365. We reasoned that the criminalization or decriminalization of certain offenses clearly fell within the purview of the

"broad delegation of police power from Congress" to the D.C. Council,[4] which predated the Home Rule Act and "provided that the District government may 'make and enforce all such reasonable and usual police regulations ... as [it] deem[s] necessary for the protection of lives, limbs, health, comfort and quiet of all persons....'" *Id.* at 366 (quoting D.C.Code § 1–226 (1967)) (internal punctuation omitted and alterations in original). The legislation did not affect our jurisdiction because it did "not purport to change the criminal jurisdiction or the specific responsibilities of the Superior Court or the Court of Appeals.... [T]he Superior Court's trial level jurisdiction of criminal cases remain[ed] intact, as d[id] the appellate jurisdiction of this court. What ... changed [wa]s that certain violations no longer constitute[d] *criminal* offenses." *Id.* at 365–66 (emphasis in original). Our direct review of the administrative judgments in the cases concerning the decriminalized traffic offenses was then provided for by the DCAPA. *Id.* at 367. *Sullivan,* as with *Greater Washington Central Labor Council, supra,* was thus decided on the grounds that the D.C. Council's legislation merely brought certain types of cases under our review pursuant to preexisting jurisdictional authority under the DCAPA. In neither case did the new legislation expand or contract the jurisdiction *qua* jurisdiction of the courts, which retained the review it had over final agency decisions.

Thus, the instant case is readily distinguishable from *Greater Washington Central Labor Council, supra,* and *Sullivan, supra,* because this court had alternative jurisdiction over the administrative decisions in those cases. Here, however, no alternative jurisdictional authority exists that permits this court to hear this appeal, and the attempt by the D.C. Council to modify the definitional parameters of finality, a definition that is intrinsic to the scope of our jurisdiction under D.C.Code § 11–721, is therefore beyond its authority.

For the foregoing reasons, we dismiss Stuart's appeal as having been taken from a non-final order.

*So ordered.*

STEADMAN, Senior Judge, dissenting:

For reasons set forth below, I believe the majority applies too woodenly the concept of finality. I would uphold § 16–4427(a)(1) of the District of Columbia Revised Uniform Arbitration Act ("DCRUAA"), codified at D.C.Code § 16–4401 *et seq.* (2009 Supp.), as I do not believe it violates the District of Columbia Home Rule Act by expanding this court's jurisdiction.

In 1955, the National Conference of Commissioners on Uniform State Laws and the American Bar Association approved a model Uniform Arbitration Act ("UAA"). *See generally* UNIF. ARBITRATION ACT, 7 U.L.A. 99 (1956). Section 19 of that act dealt with appeals. *Id.* at 739. In a prefatory note, the drafters stated, "[t]he section on Appeals is intended to remove doubts as to what orders are appealable and to limit appeals prior to judgment to those instances *where the element of finality is present.*" *Id.* at 100 (emphasis added). In 1977, the D.C. Council adopted the UAA in substantially its model form,

---

**4.** Section 302 of the Home Rule Act delegates to the D.C. Council legislative authority over "all rightful subjects of legislation within the District consistent with the Constitution of the United States and the provisions of this Act subject to all the restrictions and limitations imposed upon the States by the tenth section of the first article of the Constitution of the United States."

D.C.Code § 16–4301 *et seq.* (repealed 2008), including its § 19 as D.C.Code § 16–4317 (repealed 2008).[1] While the model act and § 16–4317 (repealed 2008) stated that an order denying an application to compel arbitration was appealable, it was silent as to the appealability of an order compelling arbitration.

We first had occasion to consider the appealability under the act of an order compelling arbitration in *American Fed'n of Gov't Emp. v. Koczak,* 439 A.2d 478 (D.C.1981). In the opinion, as I read it, we were quite consciously attempting to carry out the intent of the Council. We noted, "there is no indication ... that the Council did not intend the Act's list of appealable final orders to be exhaustive[,]" and "we conclude that the Council's omission of an order to compel arbitration from the Act's list of orders deemed to be final means that such an order is interlocutory and, hence, unappealable."[2] *Id.* at 480 (footnote omitted). Given this holding, it is not surprising that our subsequent cases have, as the majority states, "consistently held" that orders granting arbitration are not appealable.[3]

We now have before us a different situation. In 2000, the Commissioners ap-proved a Revised Uniform Arbitration Act ("RUAA"), which was an extensive over-haul of the 1956 Act. *See generally* UNIF. ARBITRATION ACT, 7 U.L.A. 1 (2000). As in most jurisdictions, the District of Columbia repealed the old act in enacting the new act in 2008. *See* D.C.Code § 16–4401 *et seq.* (2009 Supp.). In doing so, however, the Council did make certain changes from the RUAA. Included among these changes were a number enacted in response to the burgeoning use of arbitration clauses in consumer contracts. D.C. COUNCIL, COMM. ON PUBLIC SAFETY & THE JUDICIARY, REPORT ON BILL 17–50 at 1 (June 4, 2007). The Committee Report observed that the in-creased use of these clauses "in consumer agreements, especially contracts of adhe-sion, has given rise to consumer protection complaints." *Id.* at 2. The Report noted:

> many businesses have found that man-datory arbitration is advantageous in consumer contracts where the business controls the choice of arbitrators, and can afford the arbitration process more easily than can the consumer. As the arbitration process has been utilized in-creasingly, it has become clear that the limited procedural provisions of the UAA are no longer adequate.

1. With one omission, the appealable orders were those provided in the model act. The Council omitted, perhaps as unnecessary, the model act's "[a] judgment or decree entered pursuant to the provisions of this act." UNIF. ARBITRATION ACT § 19(a)(6), 7 U.L.A. 739 (1956). In addition, the introductory lan-guage of D.C.Code § 16–4317 (repealed 2008) read, "[f]or purposes of writing an appeal, the following orders shall be deemed final," in contrast to the model act's "[a]n appeal may be taken from." UNIF. ARBITRATION ACT § 19, 7 U.L.A. 739 (1956).

2. While we also commented that the omission of orders compelling arbitration was "consis-tent with the 'general rule that ... an order is final for purposes of appeal ... [when] it disposes of the entire case on the merits,'"

*Koczak,* 439 A.2d at 480 (internal citations omitted), I do not think that the court intend-ed to preclude the possibility of a contrary result. Indeed, one of the orders expressly made appealable by the act is an order deny-ing arbitration, certainly not itself a final or-der under the "general rule." *See id.*

3. We have at least once referred to the possi-bility that the limitation on D.C. Council pow-er relating to D.C.Code § 11–721(a)(1)(2001) could play a relevant part. *See Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 721–22 (D.C.1995). Even there, we relied on our view that the Council "did not intend to affect the general policy against piecemeal review embodied in D.C.Code § 11–721." *Id.* at 722.

The RUAA's section dealing with appealable orders was virtually unchanged from the UAA. As it had done previously, the Council modeled the appeals section in the new act on that of the RUAA. However, while the Report does not specifically mention the appeals provision, its concern over consumer protection presumably motivated the change from the RUAA that expanded the list of appealable orders and whose validity is now before us. As noted in footnote 2 of the majority opinion, the Council amended the comparable RUAA section by adding the phrase "or granting" so that the District of Columbia enactment provided that an appeal could be taken from "an order denying *or granting* a motion to compel arbitration."[4] D.C.Code § 16–4427(a)(1)(2009 Supp.) (emphasis added).

The issue before us is whether this provision lies beyond the power of the Council in light of D.C.Code § 11–721(a)(1) (2001). In particular, the issue, as I see it, is whether the Council has any role in the determination of what are "final orders or judgments." I think in this regard it is essential to observe that despite the "general rule" that orders and judgments are not "final" until all issues as to all parties have been disposed of, our jurisprudence is riddled with exceptions to this rule.

A prominent example is the judge-made so-called *Cohen* rule which deems as "final" within the grant of statutory appellate jurisdiction "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter,* —— U.S. ——, 130 S.Ct. 599,

603, 175 L.Ed.2d 458 (2009) (internal citations omitted); *see also Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Within this doctrine, we have on a number of occasions allowed appeals from determinations that were not "final" in the classic sense. *See, e.g., District of Columbia v. Pizzulli,* 917 A.2d 620, 625 (D.C.2007) (order denying immunity from prosecution); *McAteer v. Lauterbach,* 908 A.2d 1168, 1169 (D.C.2006) (order granting a motion to cancel and release notices of *lis pendens* ); *Galloway v. Clay,* 861 A.2d 30, 31 (D.C.2004) (order denying an attorney's motion to withdraw); *In re Ti.B.,* 762 A.2d 20, 27 (D.C.2000) (order prohibiting father from conferring with his criminal defense counsel on Fifth Amendment privilege and barring counsel from the courtroom while father asserted that privilege in neglect proceeding).

To be sure, no argument is made here that the stringent requirements of *Cohen* are met. But the point at issue, that courts have determined that "final" does not always mean final in every respect, is not limited to *Cohen* situations. For example, in *In re D.M.,* 771 A.2d 360, 364–66 (D.C.2001), we permitted an appeal from an order denying a child's biological mother all visitation rights. We noted that "[t]he broader controversy cannot be deemed to have been fully resolved until the issues of termination of parental rights (TPR) or adoption have been finally decided." *Id.* at 365. However, we observed that there was an element of finality inherent in the case because the order denying

---

4. The appeals section in the DCRUAA differs from that in the District of Columbia Uniform Arbitration Act ("DCUAA") in that the current version uses the same language as the RUAA in providing that "an appeal may be taken from," rather than the language in the prior act that "the following orders shall be deemed final." *See generally* D.C.Code § 16–4317 (repealed 2008); D.C.Code § 16–4427 (Supp. 2009). I think this linguistic change carries no significance. The act itself stresses the need for uniformity. D.C.Code § 16–4428 (2009 Supp.).

visitation finally decided that "very significant ... issue" and we held that this was "sufficient for purposes of appellate jurisdiction." *Id.; see also In re Ko.W.*, 774 A.2d 296, 303 (D.C.2001) ("An order denying a parent the right to visit his child is appealable, notwithstanding that proceedings to terminate parental rights have not been instituted.") (citing *In re D.M.*, 771 A.2d at 370). Another example is *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C.1994). In *McCloud*, we held that this court had jurisdiction to entertain an appeal from a trial court order determining an heir to a decedent's estate. *Id.* at 203–06. Although the administration of the estate was incomplete and although the order did not even conclusively establish the heir's rights, we observed that "contested litigation as to the status of an heir is conceptually separate from the day-to-day administration of an estate[ ] ... for purposes of appeal, and ... it would be impracticable to view the administrative process as some kind of 'umbrella' lawsuit which deprives an order such as the one here at issue of the requisite finality." *Id.* at 205–06. Similarly, in *In re Delaney*, 819 A.2d 968, 993–94 (D.C.2003), we held that a probate order which conclusively disposed of the issue of the decedent's personal representative's compensation under the will met the standard of finality set out in *Murphy, supra,* because it finally adjudicated a substantial right.

Trial court rules can bestow finality at certain points in extended proceedings such as probate. See Super. Ct. Prob. R. 8(c) (2009), which sets forth six types of probate orders that shall be "deemed final." Moreover, individual trial judges have the power to impose finality for purposes of appeal. Under Super. Ct. Civ. R. 54(b) (2009), "the [trial] [c]ourt may direct the entry of a final judgment as to 1 or more but fewer than all of the claims or parties ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment[ ]" and that judgment is then appealable. The Supreme Court has held that Rule 54(b) comports with the finality requirement of 28 U.S.C. § 1291 and hence does not expand the jurisdiction of the courts of appeal. *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435–38, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). Likewise, D.C.Code § 11–721(d) (2001)[5] gives Superior Court judges discretion in a civil case to "certify in writing that an otherwise non-appealable ruling or order 'involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from the ruling or order may materially advance the ultimate termination of the litigation or case.'" *Rolinski v. Lewis,* 828 A.2d 739, 750 (D.C.2003) (citing D.C.Code § 11–721(d)).[6] Indeed, by our recent holding that an order compelling arbitration is appealable when the trial court also dismisses the case with prejudice, as opposed to staying the case pending arbitration, we have effectively

---

**5.** This statutory provision was modeled on the analogous U.S.Code provision, 28 U.S.C. § 1292(b).

**6.** To be sure this grant of authority is statutory from Congress, as are a number of other situations where plainly interlocutory appeals are allowed, see D.C.Code § 11–721(a)(2) and D.C.Code § 23–104 (2009 Supp.). Included in such allowable appeals are orders relating to injunctions. In *Koczak, supra,* we took note of that provision but concluded that the Council intended that arbitration orders should not be regarded as injunctions. 439 A.2d at 480 n. 7. "In the absence of the Uniform Arbitration Act, certain orders affecting arbitration could be viewed as orders respecting injunctions, and thus appealable interlocutorily." *Id.* Here again, the opinion relied on Council intent.

given the trial court judge the power to make its action appealable, or not appealable, as the judge sees fit. *Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1121 (D.C.2010) (jurisdiction to hear claim that arbitration clause in consumer contract was unconscionable).[7]

As I have mentioned, our decisions finding no finality in orders granting arbitration are at bottom based on the Council's failure to include such decisions as appealable in the UAA. In contrast, we have had no problem giving effect to its determination that orders denying arbitration were appealable, citing consistently to D.C.Code § 16–4317(a)(2)(repealed 2008). *See 2200 M Street, L.L.C. v. Mackell,* 940 A.2d 143, 147 n. 2 (D.C.2007); *Benefits Commc'n Corp. v. Klieforth,* 642 A.2d 1299, 1301 n. 10 (D.C.1994); *Hercules & Co. v. Beltway Carpet Serv., Inc.,* 592 A.2d 1069, 1071 (D.C.1991); *see also Evans v. Dreyfuss Bros.,* 971 A.2d 179, 185–86 (D.C.2009). While it is true that in those cases, no issue was raised relating to the possible jurisdictional limitation of D.C.Code § 11–721, I believe the deference to the Council determination was as justified then as it is today to the Council's subsequent determination that orders granting arbitration should be similarly appealable.

I do not suggest that the Council can, willy-nilly, make appealable as "final" those orders and judgments that plainly do not fall in that category. Here, however, we are dealing with the enactment of an overarching statutory scheme (or, more precisely, its re-enactment with significant changes) providing for distinct stages in its procedures. Just as courts are called upon to make determinations as to when particular orders and judgments should be deemed "final" for purposes of appeal, so should the Council have the same ability to make reasonable determinations to that effect without contravening the fundamental purpose of the jurisdictional limitation in D.C.Code § 11–721.[8] I do not think it can fairly be contravened that both orders granting arbitration and orders denying arbitration are critical turning points in the overall statutory scheme of the RUAA. Both of them are indeed final in determining whether or not the extensive arbitration procedures established by the act can be utilized at all.

[A]ppellate review [is not limited] to "those final judgments which terminate an action" ... but rather that the requirement of finality is to be given a "practical rather than a technical construction." The inquiry requires some evaluation of the competing considerations underlying all questions of finality—"the inconvenience and costs of piecemeal review on the one

---

7. This holding is entirely consistent with the Supreme Court's holding under the Federal Arbitration Act in *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). A footnote in that decision observes that had the district court entered a stay rather than a dismissal, the order would not be appealable. However, as authority, the court cites to a provision of the federal act that specifically bars appeals of orders staying proceedings pending arbitration, like other orders compelling arbitration. *Id.* at 87 n. 2, 121 S.Ct. 513, citing 9 U.S.C. § 16(b)(1). The situation before us involves precisely the opposite type of statutory provision.

8. It seems odd to hold that the Council somehow lacks authority to determine as part of its overall scheme that an order compelling arbitration is appealable, when absent that power, the Council could more crudely effectuate its apparent purpose by simply providing that consumer arbitration agreements, as a whole, are not enforceable. The Council did include a provision, absent from the model RUAA, that declares arbitration agreements in insurance policies with individual consumers to be "void and unenforceable." D.C.Code § 16–4403(c)(1).

hand and the danger of denying justice by delay on the other.”

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (internal citations omitted). In my judgment, the Council has made a reasonable determination that an order granting arbitration contains the requisite “element of finality” to avoid any contravention of D.C.Code § 11–721.