# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 15, 2013          Decided June 25, 2013

No. 11-7088

SHIRLEY SHERROD,
APPELLEE

v.

ANDREW BREITBART AND LARRY O'CONNOR,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00477)

*Bruce D. Brown* argued the cause for appellant Larry O'Connor. With him on the briefs were *Bruce W. Sanford* and *Mark I. Bailen*. *Eric Kuwana* entered an appearance.

*Laura R. Handman*, *Micah J. Ratner*, *Jonathan R. Donnellan*, *Kristina E. Findikyan*, *David E. McCraw*, *Kurt Wimmer*, *Gregg P. Leslie*, and *Eric N. Lieberman* were on the brief for *amici curiae* Media Organizations, et al. in support of appellants.

*Ariel B. Levinson-Waldman*, Senior Counsel to the Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for *amicus curiae* District of

Columbia. With him on the brief were *Irvin B. Nathan*, Attorney General, and *Todd S. Kim*, Solicitor General.

*Thomas D. Yannucci* argued the cause for appellee. With him on the brief were *Michael D. Jones* and *Thomas A. Clare*. *Peter A. Farrell* and *Beth A. Williams* entered appearances.

*Julie A. Murray*, *Paul Alan Levy*, and *Arthur B. Spitzer* were on the brief for *amici curiae* Public Citizen, Inc., et al. in support of neither party.

Before: BROWN and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Concurring opinion filed by *Circuit Judge* GRIFFITH.

RANDOLPH, *Senior Circuit Judge*: This is an appeal from an order of the district court denying defendants' motion to dismiss under the District of Columbia's Anti-SLAPP Act of 2010. D.C. Code § 16-5501 *et seq.* The district court's jurisdiction rested on diversity of citizenship. 28 U.S.C. § 1332. The court gave three reasons for its order: the D.C. statute is inapplicable in federal court under the *Erie* doctrine, *see Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); the D.C. statute was not effective at the time the complaint was filed and was not retroactive; and defendants' motion under the statute was untimely. *Sherrod v. Breitbart*, 843 F. Supp. 2d 83 (D.D.C. 2012).

SLAPP stands for "strategic lawsuits against public participation" and refers to suits "aimed to punish or prevent the expression of opposing points of view." COMM. ON PUB.

SAFETY & THE JUDICIARY, REP. ON B. 18-893, at 1 (D.C. 2010). The D.C. anti-SLAPP Act, which became effective March 31, 2011, was intended to "allow a defendant to more expeditiously, and more equitably, dispense" with such a suit. *Id.* It provides that a moving party is entitled to dismissal of the complaint upon a prima facie showing that the claim arises from conduct protected by the statute, unless the responding party demonstrates a likelihood of success on the merits. D.C. Code §§ 16-5501, 16-5502.

The first question is whether we have appellate jurisdiction. The question presented itself because the district court's order was not a final judgment ending the action. *See* 28 U.S.C. § 1291. Defendant O'Connor invokes the collateral order doctrine.[1] *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). This confers appellate jurisdiction over "district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

Other courts of appeals have considered whether the collateral order doctrine permits review of interlocutory appeals from denials of motions to dismiss under state anti-SLAPP statutes. In *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), the Ninth Circuit held that "[b]ecause California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well." *Id.* at 1025–26. It then concluded that it had jurisdiction over the appeal because "[a] district court's denial of a claim of

_____

[1] Andrew Breitbart and Larry O'Connor were defendants in the district court. Breitbart died on March 1, 2012. His estate did not enter an appearance in this appeal.

immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 1026; *see also DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013–16 (9th Cir. 2013); *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010).

But the Ninth Circuit also held that district court orders denying motions to dismiss under Nevada's and Oregon's anti-SLAPP statutes were not final orders and were not appealable under the collateral order doctrine. *See Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 800–02 (9th Cir. 2012); *Englert v. MacDonell*, 551 F.3d 1099, 1105–07 (9th Cir. 2009). The *Englert* court concluded that Oregon's statute "was not intended to provide a right not to be tried, as distinguished from a right to have the legal sufficiency of the evidence underlying the complaint reviewed by a *nisi prius* judge before a defendant is required to undergo the burden and expense of a trial." *Englert*, 551 F.3d at 1105. The court's conclusion was "based on the failure of the Oregon anti-SLAPP statute to provide for an appeal from an order denying a special motion to strike."[2] *Id.* The Ninth Circuit used the same reasoning in *Metabolic Research*, holding that "Nevada's anti-SLAPP statute is more like Oregon's at the time we decided *Englert*" because "unlike California's, it does not furnish its citizens with immunity from trial," 693 F.3d at 801, and "[a] legislatively approved immunity from trial, as opposed to a mere claim of a right not to be tried, is imbued with a significant public interest," *id.* at 800.

The First Circuit determined it had jurisdiction under the collateral order doctrine over "an order that a state anti-SLAPP statute does not apply at all to federal court proceedings due to

---

[2] Oregon later amended its anti-SLAPP statute. *See* Or. Rev. Stat. §§ 31.150(1), 31.152(4) (amended 2010).

[a direct conflict with] Federal Rules 12 and 56." *Godin v. Schencks*, 629 F.3d 79, 84 (1st Cir. 2010). The court found that "[i]t is relevant, but not conclusive" that Maine's anti-SLAPP statute, as interpreted by the state supreme court, permits interlocutory appeals of orders denying special motions to dismiss, because it demonstrates that Maine's legislature "'wanted to protect speakers from the trial itself rather than merely from liability.'" *Id.* at 85 (quoting *Batzel*, 333 F.3d at 1025). The court used this determination to reach its ultimate conclusion that "the order at issue here involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Id.* (quoting *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 499 (1989)).

The Fifth Circuit also decided that an order denying a motion to dismiss under Louisiana's anti-SLAPP statute is immediately appealable under the collateral order doctrine, in part because the statute "provides a right not to stand trial, as avoiding the costs of trial is the very purpose of the statute." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 178 (5th Cir. 2009). The court recognized that "[l]ike Oregon's anti-SLAPP statute, Article 971 does not include a provision expressly authorizing immediate appeal." *Id.* at n.*. It attempted to harmonize this apparent departure from the Ninth Circuit's reasoning by noting that Louisiana's courts "allow immediate appeals through writs of supervision." *Id.*

With respect to the D.C. anti-SLAPP Act, the statute's text contains no provision for interlocutory appeals. The D.C. Council's Committee on Public Safety and the Judiciary explained in its legislative report that it had removed such a provision, included in the original bill, because of a decision of the D.C. Court of Appeals that the Council could not expand the appellate jurisdiction of the District's courts over appeals of non-final orders. COMM. ON PUB. SAFETY & THE JUDICIARY,

REP. ON B. 18-893, at 7 (citing *Stuart v. Walker*, 6 A.3d 1215, 1218–19 (D.C. 2010)). The committee expressed its strong support for the excised provision, which "would have provided an immediate appeal over a non-final order (a special motion to dismiss)," and for the view of the dissenting opinion in *Stuart* that the Council had the authority denied by the majority. *Id.*

*Stuart* held that "[w]hen read in conjunction with the definition of our jurisdiction in D.C. Code § 11-721(a)(1) as being over 'final orders,' a plain reading of § 602(a)(4) of the Home Rule Act is that the D.C. Council cannot enact any legislation affecting the finality of orders for purposes of appealability to this court, or attempt to modify this court's jurisdiction in any other way." *Stuart*, 6 A.3d at 1217 n.3. The D.C. Court of Appeals vacated the decision and granted a petition for rehearing en banc. *Stuart v. Walker*, 30 A.3d 783 (D.C. 2011). The en banc court issued an unpublished judgment stating that "as the *en banc* court is equally divided regarding the issue of jurisdiction . . . the trial court's order directing the parties to proceed with arbitration remains in full force and effect." *Stuart v. Walker*, No. 09-CV-900 (D.C. Feb. 16, 2012) (unpublished judgment).

The D.C. Court of Appeals issued an order in another case dismissing an interlocutory appeal under the anti-SLAPP Act because "[t]he subject order is not appealable under the collateral order doctrine, *see Cohen v. Beneficial Loan Corp.*, 3[3]7 U.S. 541, 546 (1947), and the District's anti-SLAPP statute does not provide for interlocutory review. *See, e.g.*, *Englert v. MacDonell*, 551 F.3d 1099 (9th Cir. 2009)." *Newmyer v. Sidwell Friends Sch.*, No. 12-CV-847 (D.C. Dec. 5, 2012) (unpublished order). The significance of this terse, unpublished order is unclear.

Rather than resolving the issues relating to application of the collateral order doctrine, we shall assume that we have appellate jurisdiction. We may do so without running afoul of *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–102 (1998). In holding that "a merits question cannot be given priority over an Article III question," 523 U.S. at 97 n. 2,[3] the Court in *Steel Co.* left standing its decision in *Norton v. Mathews*, 427 U.S. 524, 530, 532 (1976), in which the Court avoided "difficult and perhaps close jurisdictional arguments" by assuming appellate jurisdiction when precedent had rendered the "merits . . . plainly insubstantial." *See also Secretary of the Navy v. Avrech*, 418 U.S. 676, 677–78 (1974) (per curiam). In distinguishing *Norton*, the *Steel Co.* Court pointed out that another one of its decisions had conclusively resolved the merits issue in *Norton*, and so the *Norton* Court "did not use the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Steel Co.*, 523 U.S. at 98. In other words, a court does not exercise its "power to declare the law," *id.* at 94, and thus need not resolve difficult questions of its jurisdiction, when a prior judgment of the court forecloses the merits issue. Other courts of appeals have since invoked *Norton* to assume jurisdiction when the merits decision was "foreordained" by precedent. *See Starkey v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1260 (10th Cir. 2009); *Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 59–60 (1st Cir. 2003); *Seale v. INS*, 323 F.3d 150, 151, 155 (1st Cir. 2003); *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 194–95 (2d Cir. 2002). Our court too has followed such reasoning in assuming

[3] Here there is a live case or controversy; the parties have standing; and the controversy between O'Connor and Sherrod is—in the words of Article III § 2—one "between Citizens of different States." The only jurisdictional issue relates to the collateral order doctrine.

jurisdiction and reaching the merits. *See Emory v. United Air Lines, Inc.*, No. 11-7142, ___ F.3d ___, ___ (slip op. at 9) (D.C. Cir. June 21, 2013); *cf. Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008); *Kramer v. Gates*, 481 F.3d 788, 790–91 (D.C. Cir. 2007). As we next discuss, precedent in this circuit renders the merits of this appeal a foregone conclusion.

The district court concluded that defendants' motion to dismiss was untimely because it was not filed within the 45-day period set in the D.C. anti-SLAPP Act. *Sherrod*, 843 F. Supp. 2d at 86. O'Connor conceded at oral argument that the statute's 45-day period began running when Sherrod served her complaint on February 12, 2011. O'Connor also expressly disclaimed any argument that the period did not begin to run until the statute's effective date, which came after service of the complaint. Given these concessions,[4] the limitations period in the D.C. statute was to expire on March 29, 2011. O'Connor and his co-defendant did not file their motion to dismiss under the D.C. statute until April 18, 2011. Sherrod opposed the motion on several grounds, one of which was that the motion was untimely.

O'Connor claims that his motion to dismiss was timely because the district court had granted an extension of time. The sequence is as follows. On March 10, 2011, O'Connor and his co-defendant filed a "Consent Motion to Extend Time to Answer, Move or Otherwise Plead in Response to the Complaint." It was a "Consent Motion" because plaintiff

---

[4] The defense presented no argument that the district court could simply—on *Erie* grounds—disregard the D.C. statute's 45-day limitations period for filing a motion under the anti-SLAPP law. Both sides—and the district court—assumed that the 45-day period governed. We make the same assumption.

Sherrod had agreed to allowing a thirty-day extension of time. The motion recited that defendants "hereby move the Court pursuant to Rule 6(b), Federal Rules of Civil Procedure . . . ." As grounds for the thirty-day extension, the motion stated that O'Connor had only recently retained counsel. The motion did not mention the D.C. anti-SLAPP Act. The district court granted the motion on March 15, 2011.

We reject O'Connor's argument that this extension of time enlarged the period for filing under the D.C. statute. Motions under Federal Rule of Civil Procedure 6(b) cannot extend statutory time limits.[5] "Every court to have considered this question has held that Rule 6(b) may be used only to extend time limits imposed by the court itself or by other Federal Rules, but not by statute." *Argentine Republic v. Nat'l Grid Plc*, 637 F.3d 365, 368 (D.C. Cir. 2011) ( per curiam) (collecting cases), *cert. denied*, 132 S. Ct. 761 (2011); *see also* 4B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1165 (3d ed. 2002). The reason is apparent. Rule 6(b) gives district courts wide discretion to modify the time limits set forth in the rules. Statutory time limits are different. Whether a statute of limitations may be tolled requires the court to engage in statutory interpretation. This is not a matter of the court's discretion. The intent of the legislature is controlling. *See 3M Co. v. Browner*, 17 F.3d 1453, 1460–63 (D.C. Cir. 1994). As in *Argentine Republic*, "the district court could not, as a matter of law, have granted the motion because Rule 6(b) may not be used to extend periods of time dictated by statute." 637 F.3d at 368.

It follows that the district court's granting of the "Consent Motion" to extend time pursuant to Rule 6(b) could not have

---

[5] Defendants' later filed a second motion to extend time, but by then the statutory deadline had passed.

extended the D.C. statute's 45-day limit. The district court therefore properly denied as untimely defendants' motion to dismiss under the District of Columbia's anti-SLAPP Act.

*Affirmed.*

GRIFFITH, *Circuit Judge*, concurring: In disposing of this appeal, we take the extraordinary step of deciding the merits of a controversy before ascertaining our jurisdiction. I write separately to emphasize the limits of our power on this occasion.

"Every federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction" before proceeding to the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotation marks omitted). When we act without jurisdiction, "more than legal niceties are at stake . . . . The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Id.* at 101. Article III, § 1 delegates to Congress the power to decide when and on what subjects courts of appeals may act. U.S. CONST. art. III, § 1. Pursuant to that power, Congress has restrained us from acting prior to the entry of a final judgment in the district court. *See* 28 U.S.C. § 1291. No such final judgment has issued below, so unless we are operating within one of the narrow exceptions to the rule of finality (such as the collateral order doctrine), we have no authority to "pronounce upon the meaning . . . of a state or federal law." *Steel Co.*, 523 U.S. at 101.

We dispose of this appeal without resolving whether we possess jurisdiction only because the appeal does not require us to "pronounce upon the meaning . . . of a state or federal law." The Supreme Court has held that we need not resolve complex jurisdictional questions on the rare occasion that the outcome of the case is "foreordained" by precedent – in other words, where it stands on all fours with a prior decision. *See supra* at 7 (citing *Norton v. Mathews*, 427 U.S. 524 (1976)). The majority explains that its Rule 6(b) analysis is dictated by our holding in *Argentine Republic v. National Grid Plc.*, 637

F.3d 365, 368 (D.C. Cir. 2011) (per curiam). I join that conclusion but not because it is clear to me that the rule in *Argentine Republic* would apply in every instance where a district court invokes Rule 6(b) to alter a statutory deadline or that the rule would apply particularly to the time limit in the D.C. Anti-SLAPP Act. Indeed, those issues were not considered by the district court or argued to us. I join the court's conclusion only because O'Connor failed to make any argument for why his case is legally distinguishable from *Argentine Republic*. We said enough about the meaning of Rule 6(b) in *Argentine Republic* that we may settle *this* case without "pronounc[ing] upon the meaning" further.

But the crucial point to keep in mind is that we may not use *Norton* to "reach[] a question of law that otherwise would have gone unaddressed." *Steel Co.*, 523 U.S. at 98. In a very real sense, that means that when we bypass a thorny jurisdictional problem to dispose of an appeal under *Norton*, we cannot make any new law at all. *Argentine Republic* is the law of this circuit on Rule 6(b), and this case should be seen only as an application of its holding in a case where no one argued that it did not apply. Indeed, nobody should cite our discussion of Rule 6(b) as binding precedent. Litigants wishing to learn whether Rule 6(b) may be used to extend the statutory time limit found in the D.C. Anti-SLAPP Act are advised to consult *Argentine Republic*, which provides the latest word on the subject.