NOT DESIGNATED FOR PUBLICATION

No. 121,117

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AMBER TORRES,
*Appellee*,

v.

ELIZABETH DE SANTIAGO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY L. WALLER, judge. Opinion filed April 3, 2020. Reversed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

No appearance by appellee.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

BUSER, J.:  Amber Torres filed a petition for protection from stalking on behalf of herself and her minor child against Elizabeth De Santiago. The district court granted the protection order against De Santiago to be in effect for one year, beginning September 20, 2018. Subsequently, the plaintiff has sought to extend the motion for another year. The district court has continued the hearing on that motion while keeping the original order in effect. On appeal, we hold there was insufficient evidence to issue the original order and, therefore, reverse the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2018, Torres filed a petition for a protection from stalking order on behalf of herself and her minor child against De Santiago in the Sedgwick County District Court. The petition alleged that Torres received text messages that threatened her life and her daughter's life. The district court granted Torres a temporary ex parte protection order that same day.

The district court held a hearing on the motion on August 9, 2018. During the hearing, Torres stated that she knew De Santiago from high school and the father of her child is also the father of De Santiago's child. Torres claimed that she had been receiving harassing text messages from De Santiago suggesting that Torres' daughter would be taken away and that the child would be motherless and fatherless. Torres stated she received numerous text messages, starting from the time when she was pregnant. Torres showed copies of the messages to the district judge, but the text messages are not included in the record on appeal.

Torres stated the text messages came from various phone numbers. The district court noted the text messages could be sent from cell phone apps which hide the identity of the sender. Torres stated she believed the messages came from De Santiago because of their content which included details and personal knowledge about Torres' life. Torres testified that "[t]he text messages we had gotten, they knew way too much for them—for like someone else to like know about it. It was information that only them [*sic*] would have known."

De Santiago denied sending any text messages to Torres and offered to show her text message log to the district court. De Santiago admitted that their children shared the same father but stated that he is no longer involved in her life and she had previously obtained a restraining order against him.

2

The district court continued the case until September 20, 2018, to determine if Torres continued to receive harassing text messages. During that time, the temporary protection order remained in effect.

At the September 20, 2018 hearing, Torres stated that she had received additional text messages since the last hearing. Copies of these messages were not admitted in evidence and do not appear in the record on appeal. At the hearing, Torres stated that some of the messages included statements from De Santiago's sister that were sent to the father of their children. Torres also stated that some of the messages say "I," indicating the text messages were from De Santiago herself. Torres testified that she believed De Santiago was responsible for the messages because De Santiago was upset that Torres had a child with the father.

Torres highlighted one message in particular:

"[T]he one that you're looking at . . . They're talking about the court. They're talking clearly about court. I have not spoken to anyone besides the father of my child and my mom about this; and, of course, my job. And that's the reason why they transferred me places. That's the only reason I know it's her, because [the messages are] talking about court."

For her part, De Santiago again denied the messages originated from her. De Santiago argued it was unfair for her to be accused without proof. The following exchange took place between De Santiago and the district court:

"MS. DE SANTIAGO:  Right. But like I say, why is it pointed to me? I'm not the one doing it.
"THE COURT:  Because you're the one named.
. . . .

3

"THE COURT:  You know, the circumstances show that you have reason to harass her. And that she has been harassed. She has the e-mails and the like, showing that she's been harassed.

. . . .

"THE COURT:  So, you know, there's basically nothing anyone can do. If you can go ahead and substantiate that your telephone is not the one that's been using that, yes, that's fine. But, you know, it could be someone sitting at a computer in your home using it."

The district court surmised that someone else was also involved. The district judge stated, "Well, you know, like I said, I have suspicions in my mind that it's somebody else. And it could be a third woman that you all are probably not even familiar with." Ultimately, the district court concluded that the preponderance of the evidence showed that the offending messages came from De Santiago. The district judge addressed De Santiago:

"THE COURT:  You are the person that these e-mails apparently come from. You are the person that has a problem or had a problem with Ms. Torres because you both have a man in common.

. . . .

". . . the evidence showed by a preponderance of evidence that you have been stalking Ms. Torres. And so I'm going to have to issue an order. . . .

. . . .

"THE COURT:  The evidence has shown the harassment has come from you because your name's mentioned; the fact that her boyfriend/your boyfriend, the father of her child/the father of your child are the same; the fact that statements are mentioned in the texts and the like, that you know, your child's not going to have a daddy or have a no-good daddy just like he's been for me. And things like that you know.

. . . .

"THE COURT:  Somebody in your life is causing these problems. And you have to think in your own mind, who could this be."

4

The district court entered an order for protection from stalking to be in effect for one year, until September 20, 2019. De Santiago subsequently filed a motion to alter or amend the judgment. She argued the text messages presented to the court did not prove that she was the person who sent them to Torres. In response, Torres claimed De Santiago's motion was untimely, failed to assert new evidence, and failed to explain how the district court abused its discretion as required by statute.

At the hearing on the motion to alter or amend, Torres' counsel noted the text messages had stopped. The district court denied the motion to modify noting that De Santiago failed to produce new evidence and it did not see any reason to modify the order.

De Santiago filed a timely notice of appeal and an appellate brief. Torres did not file an appellate brief or otherwise respond to De Santiago's appellate arguments.

During the pendency of this appeal, Torres filed a motion to extend the protection order for another year. Recent additions to the record on appeal show that during this time the district court has continued the hearing while keeping the original order in effect.

ANALYSIS

In this appeal, it is necessary to individually address three issues raised by De Santiago.

First, we consider whether this appeal is moot. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012) (As a general rule, "Kansas appellate courts do not decide moot questions or render advisory opinions.").

5

The protection order expired on September 20, 2019. During the pendency of this appeal, however, Torres filed a motion to extend the protection order for another year. With our approval, De Santiago has filed additions to the record on appeal which show that the hearing on Torres' motion for extension of the protection order has been continued. Preemptively, De Santiago contends that consideration of this issue on appeal is not moot. Based on the recent additions to the record on appeal, we agree that this matter is not moot but warrants our consideration.

Second, De Santiago contends the district court did not have subject matter jurisdiction over the protection from stalking petition because the record does not establish that the stalking events occurred in Sedgwick County. De Santiago points to the plain language of K.S.A. 2018 Supp. 60-31a04(a) and (b), which lists the substantive items a petitioner must include in the petition for protection from stalking when an adult and minor child is involved. She contends that because Torres never established that the stalking occurred in Sedgwick County or Kansas the district court had no jurisdiction to enter either the temporary or final protection order.

De Santiago raises the jurisdiction issue for the first time on appeal. However, jurisdictional issues may be raised for the first time on appeal. *Kincade v. Cargill, Inc.*, 27 Kan. App. 2d 798, 800, 11 P.3d 63 (2000). Our standard of review provides:  Whether jurisdiction exists is a question of law over which our court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

Because this case is readily resolved on the merits, we exercise our discretion and decline to address the procedural matter of jurisdiction. See *State v. Sammons*, No. 111,591, 2014 WL 7572365, at *2 (Kan. App. 2014) (unpublished opinion); *Sherrod v. Breitbart*, 720 F.3d 932, 936-37 (D.C. Cir. 2013) (holding that a court may presume jurisdiction and reach the merits when the answer to the merits issue is especially clear).

Next, we consider the principal issue raised by De Santiago on appeal—whether there was sufficient evidence to support the issuance of the protection from stalking order.

Our standard of review provides that a protection from stalking order is evaluated under a preponderance of the evidence standard. "As with other civil cases, these facts need only be proved by a preponderance of the evidence, meaning it is more likely than not that the facts are true." *C.M. v. McKee*, 54 Kan. App. 2d 318, 322, 398 P.3d 228 (2017). "On appeal, we generally conclude that the district court has found whatever facts would support its judgment if those facts are supported by substantial evidence." 54 Kan. App. 2d at 324. "In considering the sufficiency of the evidence we do not reweigh the evidence or pass on the credibility of the witnesses. To the contrary, we view the evidence in the light most favorable to the prevailing party." *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007).

At the outset, De Santiago contends the district court erroneously relied on text messages that were testified to by Torres or shown to the district court from photographs of the texts which were never admitted in evidence. According to De Santiago, although Torres was appearing pro se, she should be held to the same evidentiary standards as a licensed attorney. But, to the same effect, De Santiago also appeared pro se at the hearing and she failed to make a contemporaneous objection to the district court's consideration of the admissibility of the text messages. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *Foster v. Stonebridge Life Ins. Co.*, 50 Kan. App. 2d 1, 25, 327 P.3d 1014 (2012). This argument was not preserved for appellate review.

The gravamen of De Santiago's sufficiency of evidence argument is that Torres failed to prove by a preponderance of the evidence that De Santiago was the individual who sent the offensive texts. We are persuaded this argument has merit.

7

We have made an independent review of the evidence presented at both hearings on the petition. Based on this review, two key findings may be made. First, there was no direct evidence that De Santiago sent the offensive texts to Torres. In particular, the sender of the texts did not identify himself or herself in the texts. Moreover, there was no direct evidence that the texts were sent from De Santiago's cellphone. The district judge candidly noted the difficulty in proving the identity of the person who sends texts: "Well, one of the problems is, like I say, there are apps now that you can get that make it seem that someone's texting you from one phone number . . . and it's not them." The district court's order was not premised on direct evidence that De Santiago sent the offending texts. Our review of the evidence confirms the absence of any such direct evidence.

Second, the only evidence that De Santiago sent the texts was circumstantial in nature. For example, the district court surmised that because Torres and De Santiago had children from the same father that De Santiago may have a motive to dislike Torres. Additionally, Torres testified that based on the content of some of the texts, in her opinion, De Santiago was the author. The district court ultimately found the preponderance of evidence showed that De Santiago was involved because the messages contained information that only she or someone she talked to would know. In particular, the district court noted that the messages sent after the initial court hearing referred to the prior court hearing regarding the protection order.

Despite the district court's finding that De Santiago sent the offensive texts, the court's statements evaluating the identity evidence undermined its conclusion. For example, the district judge said to De Santiago:

- "Somebody in your life is causing these problems. And you have to think in your own mind, who could this be[?]"
- "Someone is really working against you. . . . It's very possibly a third woman."

8

- "But the problem is, you know, you could have a cousin or you could have a sister or just a friend that could do that."
- "Well, you know, like I said, I have suspicions in my mind that it's somebody else. And it could be a third woman that you all are probably not even familiar with."
- "But my suspicions are, there's probably someone else out there, for whatever reason. I don't even know the man's name . . . that wants to cause tension between you and Ms. Torres."
- "I don't know. You'll have to sit back and think. Someone—if someone else is doing this, they're doing this to hurt you. . . . And you know, it's someone who is acting as a friend. . . . But you know, causing you severe problems."

The district court's speculative comments underscore the frailty of the circumstantial evidence that De Santiago sent the offending texts. As identified by the district court, the number of individuals who had a reason to hurt De Santiago and Torres by sending the offensive texts was rather large.

While circumstantial evidence has probative value, we are persuaded that this evidence was not sufficiently substantive to identify De Santiago as the sender of the texts. Given the lack of any direct evidence that De Santiago sent the texts, and the several individuals identified by the district court who may have sent the texts, we are persuaded that in the light most favorable to Torres, there was not a preponderance of evidence to support the issuance of the protection from stalking order.

Reversed.