IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,795

STATE OF KANSAS,
*Appellee*,

v.

JOSE DELACRUZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

A district court's power to impose sanctions for contempt of court is regulated by statute. Therefore, to impose a sanction against a contemnor, the district court must follow the procedural requirements set forth in the statute upon which the court relies for its contempt power.

2.

The governmental power to compel a person to testify in a court of law is not absolute, and the most important exception to that power is a person's right, under the Fifth Amendment to the Constitution of the United States, to be protected against compulsory self-incrimination.

3.

A witness who has no reasonable cause to fear incrimination cannot invoke the Fifth Amendment right against self-incrimination. One manner in which the State can remove the fear of incrimination and compel testimony is to grant the witness immunity that is coextensive with the witness' right against self-incrimination.

4.

A grant of immunity that merely prohibits the use of the compelled testimony in any potential future case, without immunizing any evidence that might be derived from the compelled testimony, is not coextensive with the witness' Fifth Amendment right against self-incrimination.

5.

A court cannot lawfully compel a witness to testify based upon the State's grant of mere use immunity. If a court holds a witness in contempt for invoking his or her right against self-incrimination, when that witness has not been granted immunity that is coextensive with the Fifth Amendment right against self-incrimination, the order of contempt must be reversed and the sanction imposed must be vacated.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 153, 364 P.3d 557 (2015). Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed March 2, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and sentence is vacated.

*Sam S. Kepfield*, of Hutchinson, argued the cause and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

PER CURIAM: Jose Delacruz seeks review of the Court of Appeals' affirmance of the district court's finding that Delacruz was in direct contempt of court for refusing to testify at a codefendant's trial and the affirmance of the ensuing 108-month sentence imposed for that contempt. Because the State did not offer Delacruz use and derivative use immunity that protected his constitutional right against self-incrimination, the district

2

court erred in holding Delacruz in contempt of court for invoking his constitutional right to remain silent. We reverse the order of contempt and vacate the sentence.

FACTUAL AND PROCEDURAL OVERVIEW

The State charged Delacruz with aggravated robbery and felony murder, based upon an incident in which Joshua Haines was allegedly murdered during the commission of a robbery by Delacruz and four others, including Anthony Waller. A jury convicted Delacruz of aggravated robbery but acquitted him of felony murder; the court sentenced Delacruz to an 83-month prison sentence. The conviction and sentence were upheld on appeal. *State v. Delacruz,* No. 106,082, 2012 WL 1352865 (Kan. App. 2012) (unpublished opinion), *rev. denied* 299 Kan. 1271 (2014) (*Delacruz I*).

After Delacruz' trial was completed, the State subpoenaed him to be a witness at Waller's murder trial. When Delacruz attempted to invoke his Fifth Amendment right against self-incrimination, the State informed the district court that it was granting Delacruz immunity for his testimony. The written grant of immunity proffered by the State, titled "GRANT OF USE IMMUNITY," stated:

> "COMES NOW the Plaintiff, State of Kansas, by and through Reno County District Attorney of the 27th Judicial District, Keith E. Schroeder, pursuant to the authority vested in me as District Attorney, by K.S.A. 22-3415(a)(c), do hereby grant to: Jose G. Delacruz, immunity from the use of any testimony given in the above-captioned matter on February 28, 2011 through March 9, 2011. I, Keith E. Schroeder, District Attorney, grants [*sic*] this use immunity as described above with the legal assurance that such testimony will not be used against Jose G. Delacruz in any potential future case against Jose G. Delacruz. I, Keith E. Schroeder, District Attorney, condition this grant of use immunity as described on the condition that the testimony of Jose G. Delacruz must be truthful."

3

Delacruz argued that the grant of immunity did not preclude his invocation of Fifth Amendment rights because his aggravated robbery conviction was then on appeal and because the written grant of immunity did not protect him from federal prosecution. The trial judge, Honorable Timothy J. Chambers, took the matter under advisement.

In the interim, the United States Attorney for the District of Kansas, Barry R. Grissom, sent a letter to the district attorney stating that Grissom was familiar with the facts surrounding Delacruz' case and that while the letter did not act as a "formal grant of immunity," no federal prosecution against Delacruz was warranted or would be forthcoming for his involvement in the murder of Haines. Grissom opined that the federal prosecution of Delacruz would violate the Department of Justice's *Petite* policy. See *Petite v. United States*, 361 U.S. 529, 530, 80 S. Ct. 450, 4 L. Ed. 2d 490 (1960) (a federal trial following a state prosecution for the same conduct generally barred).

Judge Chambers then issued an order stating:  "K.S.A. 22-3415 confers upon the District Attorney the authority to grant *use and derivative immunity*. Written immunity has been granted by the District Attorney to Jose Delacruz. Therefore, Jose Delacruz will be compelled to testify in the trial of the above captioned matter." (Emphasis added.) The district court apparently did not address the fact that the written document purported to grant only use immunity. See *Kastigar v. United States*, 406 U.S. 441, 453-54, 92 S. Ct. 1653, 32 L. Ed. 2d 212, *reh. denied* 408 U.S. 931 (1972) (mere use immunity insufficient protection under Fifth Amendment; use and derivative use immunity coextensive with constitutional privilege against self-incrimination).

Delacruz appeared before Judge Chambers three times during Waller's trial and, upon advice of counsel, refused the judge's order to testify. Judge Chambers set a jury trial on the question of whether Delacruz was in direct criminal contempt of court for

4

refusing to testify at Waller's trial. Meanwhile, Waller was convicted of first-degree felony murder and aggravated kidnapping without Delacruz' testimony. See *State v. Waller*, 299 Kan. 707, 328 P.3d 1111 (2014) (affirming convictions and sentences). Delacruz' contempt case was reassigned to the Honorable Joseph L. McCarville III.

The State then filed an accusation of contempt, charging Delacruz with three counts of criminal contempt based on the theory that each time he appeared before Judge Chambers and refused to testify constituted a separate contemptuous act. The State complained that Delacruz' refusal to testify made him unavailable for cross-examination, rendered his video recorded statements inadmissible, and precluded the State from explaining to the jury why Delacruz was not called as a witness. The State asked for consecutive sentences of 36 months for each act of contempt, for a controlling sentence of 108 months in prison, to be served consecutively to Delacruz' 83-month prison sentence for aggravated robbery.

But when Delacruz appeared before Judge McCarville on May 23, 2011, the judge recited a different accusation of contempt to Delacruz. The court had sua sponte drafted a contempt accusation that alleged that Delacruz had committed one act of contempt for failing to comply with an order of the court "to appear and testify under oath as a witness." Judge McCarville informed Delacruz that he would not impose a prison sentence greater than the State's recommendation of 108 months. Delacruz pled not guilty and the matter was set for trial.

On the morning scheduled for trial, Judge McCarville denied Delacruz' motion to dismiss based upon the claim that Judge Chambers' order to testify had violated Delacruz' Fifth Amendment right against self-incrimination. Thereafter, Delacruz waived his right to a jury trial and the case was submitted to Judge McCarville on stipulated facts. After considering arguments, Judge McCarville stated,

5

"There is really no doubt that Mr. Delacruz didn't comply with a direct order from District Judge Timothy J. Chambers, Division II, to testify in the Anthony Waller case and based upon my previous rulings there is no reasonable basis for him to have claimed the right not to testify under the Fifth Amendment so his refusal to testify was unlawful, was willful, was intentional and felonious and occurred here in Reno County in this court. The Court finds the defendant is guilty beyond a reasonable doubt of felony criminal contempt of court as alleged in the accusation."

After finding Delacruz guilty of direct criminal contempt, Judge McCarville proceeded to sentencing. The State adhered to its 108-month sentencing recommendation, notwithstanding the district court's dismissal of two counts of the State's original accusation in contempt. Delacruz asked for a six-month sentence.

Before pronouncing sentence, Judge McCarville endeavored to provide the reasoning behind his decision, albeit the court might have overlooked that it was the State, not the defendant, that had sought to compel Delacruz' testimony. The court explained:

"The question here is not, this is not a case where we're talking about somebody not taking their hat off or saying a bad word or not standing to address the Court or interrupting another attorney where those things are somewhat disruptive and do not lead to creation of the kind of atmosphere that we need to have in order for people to feel that when they come to court they can present, they can give their, they can present their case and witnesses can come to court and testify without having intimidation going in the courtroom or disruption or annoyance or disturbance. Those kind of things, that's, in my opinion, are a little on a different level and a different plane. What we have in this case is an attack against the whole, the very essence of the judicial process.

"The reason that we're talking about celebrating Veteran's Day tomorrow, thousands and thousands of veterans have sacrificed their life to preserve our way of life;

6

the most, in my opinion the most important of which is to have everyone treated the same, that in courts doesn't matter who you are you have the same rights. Doesn't matter who you are, you're treated with the same respect and dignity and it doesn't matter who you are if you're the poorest person with the most depraved background, if you have a witness that you want to have testify . . . that has relevant and admissible evidence in your case then you have the right to have that person brought to court and compelled to testify. Defendants charged with murder or other heinous crimes have the right to expect that if they have a witness that's going to help present their defense that the Court will have the power to bring that person in and make them testify in order to help them prove their innocence and what Mr. Delacruz has done is to say well, maybe not so fast. It doesn't apply when I decide that I'm not going to be the witness.

"What I need to know is okay, what is a sufficient sentence to cause a person in Mr. Delacruz's position to decide that he'd rather testify and take his chances with whatever repercussions there might be that his attorneys tell him about. What is enough years or months to get him to say I'm going to take the stand, I'm going to testify because I do not want to degrade the authority of the Court. It's certainly not six months. It certainly has to be a number of years. It doesn't matter whether Mr. Delacruz received an 83-month sentence or a life sentence, you know, because we're not talking about his sentence for the crime that he was convicted of. We're talking about what he did in this contempt.

"What does this do to the dignity and the authority of the Court? I believe that I have a duty to, under Canon One and Canon Two under the [Code] of Judicial Conduct to maintain the authority and dignity of the Court and it's not whether the attorney general came here. The attorney general would be assisting the Court by presenting evidence and making arguments to assist the Court in figuring out the Court's duty but the duty to punish for contempt of court is not an executive branch function. It's a duty that the Court has as a part of the essence of what a court is. We are [a] separate and co-equal branch of government and our purpose is to make sure that all parties have a tribunal in which they have access to compulsory process that's effective. I don't have anything to suggest that any sentence less than 108 months would be sufficient to charge the Court's responsibility. I realize that's more than he got for the robbery but this is more serious

than robbery. This is an attack against our judicial system. This is more serious than armed robbery what you did, Mr. Delacruz . . . ."

Judge McCarville then sentenced Delacruz to 108 months in prison, to be served consecutive to the 83-month sentence for his aggravated robbery conviction. The subsequently filed journal entry recited that the court "finds [Delacruz] guilty beyond a reasonable doubt of Direct Criminal Contempt of Court, pursuant to K.S.A. 20-1203" and that Delacruz would serve 108 months in prison consecutive to his 83-month sentence for aggravated robbery. The order further noted that Delacruz had waived his right to a jury trial and the matter proceeded to a bench trial on stipulated facts.

On appeal, the Court of Appeals affirmed the contempt conviction and sentence. See *State v. Delacruz*, 52 Kan. App. 2d 153, 172, 364 P.3d 557 (2015) (*Delacruz II*). The panel rejected Delacruz' argument that he validly exercised his Fifth Amendment right to refuse to testify, opining that his claim that he was not immune from federal prosecution lacked merit under *In re Birdsong*, 216 Kan. 297, 532 P.2d 1301 (1975). *Delacruz II*, 52 Kan. App. 2d at 158-61. Moreover, the panel held that Delacruz had failed to establish that his testimony might form the basis for a violation of federal law, as required by the plain language of K.S.A. 22-3415(c). While acknowledging that the letter from the U.S. Attorney was not a formal grant of immunity, the panel declared that the letter clearly stated that no federal prosecution would be forthcoming. 52 Kan. App. 2d at 1661.

With respect to the length of the sentence, the panel held that the trial court did not abuse its discretion in imposing the 108-month sentence, noting that the factors for determining an appropriate sentence for criminal contempt set forth in *United States v. Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677, 91 L. Ed. 884 (1947), supported the sentence imposed. 52 Kan. App. 2d at 167-71.

8

On review, Delacruz claims that (1) the State's grant of immunity was not coextensive with his rights against self-incrimination under both the United States and Kansas Constitutions and did not protect him against federal prosecution; and (2) the district court abused its discretion by imposing an excessive sentence of 108 months' imprisonment.

JURISDICTIONAL DEFECT

Before reaching the merits of Delacruz' claims, we consider a jurisdictional question raised sua sponte by this court. See *Kaelter v. Sokol*, 301 Kan. 247, 247, 340 P.3d 1210 (2015); *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013) (appellate court has duty to question jurisdiction on own initiative). The parties were notified prior to oral arguments to be prepared to address the following issue:  Whether the district court's journal entry for direct contempt failed to comply with the written record requirement of K.S.A. 20-1203, rendering the contempt order void for lack of jurisdiction.

*Standard of Review*

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015). Here, the jurisdictional question involves an interpretation of K.S.A. 20-1203; statutory interpretation is subject to unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

9

*Analysis*

A district court's power to impose sanctions for contempt of court is regulated by statute. "No inherent power to punish for contempt exists independent of K.S.A. 20-1201 *et seq*." *State v. Jenkins*, 263 Kan. 351, 352, 950 P.2d 1338 (1997). "Thus, to impose a sanction against a contemnor, a court must follow the procedural requirements of K.S.A. 20-1201 *et seq*." *In re M.R*., 272 Kan. 1335, 1341, 38 P.3d 694 (2002).

In this case, the district court's journal entry recites: "The Court finds the Defendant guilty beyond a reasonable doubt of Direct Criminal Contempt of Court, pursuant to K.S.A. 20-1203." Consequently, the district court was required to follow the procedural requirements set forth in K.S.A. 20-1203 as a condition precedent to imposing a sanction on Delacruz. That statute provides:

> "That a direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge [the accused] guilty [of direct contempt] *a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto,* and the sentence of the court thereon." (Emphasis added.)

The journal entry in this case, filed on December 1, 2011, merely recited that the district court "deliberates on the stipulation of facts, exhibits, applicable law and arguments of counsel" and "finds [Delacruz] guilty beyond a reasonable doubt of Direct Criminal Contempt of Court, pursuant to K.S.A. 20-1203." In other words, the recorded judgment of the court failed to specify the conduct constituting contempt and failed to state the defense or extenuation offered by the accused, both of which were statutorily required under the contempt authority that Judge McCarville chose to utilize.

10

In *Harsch v. Miller*, 288 Kan. 280, 200 P.3d 467 (2009), we emphasized the importance of a district court properly recording a statute-compliant judgment of contempt when utilizing K.S.A. 20-1203 as the contempt authority. There, the district court found plaintiff's attorney in direct contempt of court under K.S.A. 20-1203 for failing to appear for trial, in contravention of a direct court order for the attorney to be present. Although the attorney had clearly and explicitly told the district court why the attorney believed he should not have to appear for the trial, the "journal entry contain[ed] no reference as to *why* [the attorney] failed to appear, *i.e.*, 'a statement of whatever defense or extenuation [the attorney] offered.'" The *Harsch* court held that the failure to include K.S.A. 20-1203's required content in the journal entry of contempt was a fatal jurisdictional defect that voided the direct contempt order, and the presence of the requisite information elsewhere in the record on appeal "cannot cure the defect caused by [its] absence in the journal entry." 288 Kan. at 295; cf. *Padron v. Lopez*, 289 Kan. 1089, 1106, 220 P.3d 345 (2009) (failure to comply with procedural requirements of indirect contempt statute K.S.A. 20-1204a is jurisdictional).

*Harsch* cited *Jenkins*, where this court discussed the compulsory statutory procedure for direct contempt:

> "K.S.A. 20-1203 provides for summary punishment, *but requires that a written judgment be entered, specifying the contemptuous conduct, defense or extenuating circumstances*, and the sentence imposed. Failure to comply with 20-1203 is jurisdictional. See *In re Gambrell*, 160 Kan. 620, 623, 164 P.2d 122 (1945), *reh. denied* 161 Kan. 4, 165 P.2d 760 (1946). . . .
>
> "Direct contempt orders have been held void for either failure to specify the conduct constituting the contempt or to state any defense or extenuation offered by the accused. See, *e.g*., *State v. Flanagan*, 19 Kan. App. 2d 528, 533, 873 P.2d 195 (1994)." (Emphasis added.) *Jenkins,* 263 Kan. at 357.

11

Likewise, in *State v. Williams*, 28 Kan. App. 2d 97, 11 P.3d 1187 (2000), the district court's journal entry memorializing the sentencing hearing for a prospective juror found in direct contempt under K.S.A. 20-1203 failed to state the defenses or extenuating circumstances offered by the juror. When the prospective juror argued on appeal that the contempt order was void, the State countered with the argument that "the purpose of the requirement of K.S.A. 20-1203 for a more detailed journal entry is to ensure a proper record for appellate review and that the hearing transcript's recording of [the prospective juror's] statement in her defense eliminates the need for such a journal entry in this case." 28 Kan. App. 2d at 101. The Court of Appeals panel rejected that argument, declaring that "[t]he fact that we have access to a transcript of [the] sentencing hearing does not excuse the district court's obligations under K.S.A. 20-1203." 28 Kan. App. 2d at 102.

Granted, K.S.A. 20-1203's requirement of a judgment of record that specifies the contemptuous conduct and the accused's defense or extenuation is preceded by statutory language that authorizes a summary punishment for a direct contempt without the need for a written accusation. One might presume the Legislature intended K.S.A. 20-1203's written judgment of record requirement to serve the purpose normally served by a written accusation of contempt. And, in this case there were written accusations of contempt from both the prosecutor and the presiding judge, and Delacruz was afforded the opportunity for a trial on those accusations with counsel to represent his interests.

Perhaps more importantly, this court has recently revisited the notion of subject matter jurisdiction in the context of using that label for due process violations or procedural infirmities. See, e.g*., State v. Dunn*, 304 Kan. 773, 811, 375 P.3d 332 (2016) (overruling long-standing precedent by holding that defective charging documents do not deprive state courts of subject matter jurisdiction to adjudicate criminal cases); *State v. Ford*, 302 Kan. 455, 465, 353 P.3d 1143 (2015) (disapproving of precedent that had

12

referred to procedural errors in the determination of defendant's competency to stand trial as depriving the district court of jurisdiction); cf. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (criticizing "drive-by jurisdictional rulings" where courts fail to distinguish between subject matter jurisdiction and other types of error); *Sperry v. McKune*, 305 Kan. 469, 486, 384 P.3d 1003 (2016) (citing to *Chelf v. State*, 46 Kan. App. 2d 522, 263 P.3d 852 [2011], for the proposition that the failure to exhaust administrative remedies does not deprive district court of subject matter jurisdiction).

But unfortunately, because Delacruz did not challenge the district court's jurisdiction or argue how the process utilized by the district court failed to comply with the mandates of K.S.A. 20-1203, the parties did not flesh out how the area of the law involved in this case fits within this court's changing concepts of subject matter jurisdiction. Moreover, the answer on the merits is especially clear in this case. See *Alvarado v. Holder*, 743 F.3d 271, 276 (1st Cir. 2014) (holding that a court may "put aside ambiguous jurisdictional questions" under a statute "when precedent clearly dictates the result on the merits"); *Sherrod v. Breitbart*, 720 F.3d 932, 936-37 (D.C. Cir. 2013) (holding that a court may presume jurisdiction and reach the merits when the answer to the merits issue is especially clear); *Starkey ex rel. A.B. v. Boulder County Soc. Serv.*, 569 F.3d 1244, 1262-63 (10th Cir. 2009) (declining to consider a jurisdictional question where the party claiming jurisdiction would clearly lose on the merits); accord *In re Todd*, No. 110,958, 2014 WL 7152357, at *3 (Kan. App. 2014) (unpublished opinion) (Leben, J., concurring) ("In sum, the jurisdictional issue presents a fairly close question, but Todd cannot win on appeal on the merits. In these circumstances, I would simply rule on the merits and affirm the district court's judgment, which denied relief."), *rev. denied* 302 Kan. 1010 (2015). Accordingly, we will presume, without deciding, that the district court in this instance did not lose jurisdiction to find Delacruz in direct contempt of court through a deficient journal entry.

Delacruz has maintained from the beginning that he had a valid Fifth Amendment right to refuse to testify because the immunity granted to him was not coextensive with his constitutional right against self-incrimination. We agree with that assertion.

*Standard of Review*

In clarifying the standard of review for a Fifth Amendment self-incrimination claim, this court has stated:

> "When asked to review the violation of a defendant's Fifth Amendment right against self-incrimination, this court reviews the district court's factual findings using a substantial competent evidence standard, but the ultimate legal conclusion is reviewed as a question of law using an unlimited standard of review. *State v. Bell*, 280 Kan. 358, 362, 121 P.3d 972 (2005)." *State v. Carapezza*, 286 Kan. 992, 1007, 191 P.3d 256 (2008); *State v. Hughes*, 286 Kan. 1010, 1029, 191 P.3d 268 (2008).

*Analysis*

It is undisputed that Delacruz failed to obey a direct order from the district court when he refused to testify at Waller's trial. But "the power to compel testimony is not absolute," and the most important exception to that power is the Fifth Amendment privilege against compulsory self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 444, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). Specifically, the Fifth Amendment to the Constitution of the United States declares that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." See also Kansas Constitution Bill of Rights § 10 ("No person shall be a witness against himself . . . ."); K.S.A. 60-425

(granting every natural person a privilege to refuse to disclose "any matter that will incriminate such person"). The privilege afforded not only applies to a witness' answers that would directly support a criminal conviction but also embraces those answers which would furnish a link in the chain of evidence needed to prosecute the claimant for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

On the other hand, a witness who has no reasonable cause to fear incrimination cannot invoke the right. *Hoffman*, 341 U.S. at 486. One manner in which the State can remove the fear of incrimination and compel testimony is to grant the witness immunity in return for the witness' testimony. But not all grants of immunity will satisfy the constraints of the right against self-incrimination. As our Court of Appeals noted over two decades ago:

> "'There are three recognized types of immunity: (1) "transactional," (2) "use and derivative use," and, (3) "use." "Transactional" immunity protects the witness from prosecution for offenses to which the compelled testimony relates. This type of immunity is broader than the constitutional privilege against self-incrimination and need not always be granted, although it does, of course, constitute adequate immunity. "Use and derivative use" immunity protects the witness from the use of compelled testimony and evidence derived therefrom. It is coextensive with the constitutional privilege against self-incrimination and is therefore a sufficient grant of immunity to compel self-incriminatory testimony. On the other hand, mere "use" immunity, which only prevents the prosecution from using the compelled testimony in any criminal proceeding, is not constitutionally adequate since it does not prevent prosecuting authorities from making derivative use of the fruits of a witness' compelled testimony by obtaining investigatory leads from it.'" *Cabral v. State*, 19 Kan. App. 2d 456, 460-61, 871 P.2d 1285 (1994).

*Cabral* cited to this court's prior decision in *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174 (1989), which held:

"For a statutory grant of immunity to be coextensive with the privilege against self-incrimination, it must grant not only use immunity, or protection from the direct use of compelled incriminatory information, but also derivative-use immunity, which prohibits use of any such information for investigatory purposes leading to other evidence of criminal activity."

*Durrant* was consistent with the landmark case of *Kastigar*, which, as noted above, held that if the government wants to compel testimony from a witness claiming the Fifth Amendment privilege against compulsory self-incrimination, it must grant the witness at least use and derivative use immunity, otherwise a citation in contempt must be reversed.

Here, the State expressly granted Delacruz mere use immunity. To reiterate, the written document provided to Delacruz was entitled, "GRANT OF USE IMMUNITY," and stated in the body that Delacruz was being granted "immunity from the use of any testimony given in the above-captioned matter on February 28, 2011 through March 9, 2011." The document went on to explain that the use immunity being granted meant that Delacruz' testimony would not be used against him in any potential future case. The document did not mention the use of any evidence that might be derived from the compelled testimony. As *Kastigar* explained, the derivative use component of a coextensive grant of immunity is important because it "[bars] the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." 406 U.S. at 460. The State's grant of immunity to Delacruz plainly did not include this important component.

Curiously, the grant of immunity document refers to the statute dealing with immunities, K.S.A. 22-3415, which specifically refers to use and derivative use immunity under subsection (b)(2). But the immunity document does not purport to incorporate that statutory definition by reference; rather, it recites that the immunity is being granted "pursuant to the authority vested in me as District Attorney, by K.S.A. 22-3415(a) [and]

16

(c)." Those subsections, (a) and (c), have nothing to do with the type of immunity being granted. In other words, no reasonable inference on the type of immunity being granted can be discerned from the statutory reference.

To summarize, the State granted Delacruz use immunity; the use immunity granted was not coextensive with Delacruz' constitutional right against self-incrimination; therefore, Judge Chambers' order compelling Delacruz' testimony at the Waller trial violated Delacruz' constitutional right against self-incrimination and was unlawful. Consequently, Judge McCarville's ensuing order, finding Delacruz in direct contempt of court for refusing to testify and sentencing him to a consecutive 108-month prison term, was likewise unlawful.

Accordingly, we reverse Judge McCarville's order of contempt and vacate the 108-month sentence. We note this holding appears to require recomputing the "sentence begins date" for Delacruz with appropriate credit given on any sentence or sentences remaining. See K.A.R. 44-6-138(c) (2017 Supp.) (requiring recomputing of sentence begins date when one or more sentences in an aggregated sentence are vacated).

JOHNSON, J., concurs in the result.