NOT DESIGNATED FOR PUBLICATION

No. 121,322

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEVIN W. EWING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 12, 2021. Affirmed.

*Regina M. Probst*, of Hutchinson, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ATCHESON, JJ.

PER CURIAM: Kevin W. Ewing argues that the trial court erred by denying his motion to correct illegal sentence for two reasons: (1) because the Kansas Department of Corrections (KDOC) wrongly failed to convert his pre-Kansas Sentencing Guidelines Act (KSGA) indeterminate sentences to determinant sentences under the KSGA grid; (2) because the KDOC wrongly aggregated his sentences for purposes of determining his minimum term of imprisonment before becoming parole eligible. Because these arguments are fatally flawed, we affirm.

1

*Background*

In December 1988, in Reno County criminal case No. 88CR604, a jury convicted Ewing of aggravated burglary, attempted aggravated robbery, and obstruction of official duty. Of note, Ewing committed his crimes in Reno County criminal case No. 88CR604 just three days after he started serving parole for his burglary conviction in Sedgwick County criminal case No. 85CR1434.

Ultimately, the trial court imposed three indeterminate sentences upon Ewing for his crimes. For his aggravated burglary conviction, the trial court sentenced Ewing to not less than 10 years' imprisonment and not more than 50 years' imprisonment. For his attempted aggravated robbery conviction, the trial court also sentenced Ewing to not less than 10 years' imprisonment and not more than 50 years' imprisonment. On the other hand, for his obstruction of official duty conviction, the trial court sentenced Ewing to not less than 3 years' imprisonment and not more than 15 years' imprisonment. Also, the trial court ran Ewing's sentences consecutively because Ewing's criminal history made him a habitual offender under the Habitual Criminal Act, K.S.A. 21-4504 (Ensley 1988). Thus, in total, the trial court sentenced Ewing to a controlling term of 23 to 155 years' imprisonment for his crimes.

After sentencing, Ewing appealed his convictions and sentences in No. 88CR604 to this court in *State v. Ewing*, No. 63,620, unpublished opinion filed March 30, 1990 (Kan App.). But this court affirmed Ewing's convictions and sentences. Additionally, about the legality of Ewing's sentences, this court explicitly held that Ewing's "sentences were within the statutory limits." *Ewing*, No. 63,620, slip op. at 13-14.

Next, in November 1993, upon our Legislature's enactment of the KSGA, the KDOC completed a worksheet to determine whether Ewing's pre-KSGA indeterminate sentences could be retroactively converted to determinate sentences under the KSGA

2

grid. Ultimately, the KDOC determined that Ewing was not entitled to conversion of any of his pre-KSGA indeterminate sentences into determinate sentences under the KSGA grid because of the severity of his criminal history. See K.S.A. 1993 Supp. 21-4724(b)(l) (stating that offenders may have their indeterminate pre-KSGA sentences converted to determinate KSGA grid sentences only if their prior convictions would not require their presumptive imprisonment under the KSGA grid).

After the KDOC determined that Ewing was not entitled to conversion of his pre-KSGA indeterminate sentences to determinate sentences under the KSGA grid, Ewing did not immediately challenge the KDOC's determination. Yet, in December 2014, nearly 11 years after the KDOC completed its worksheet, Ewing filed a motion to correct illegal sentence in his Sedgwick County criminal case No. 85CR1434. In that motion, Ewing argued that the KDOC should have converted his sentence for his 1985 Sedgwick County burglary to a determinate sentence under the KSGA grid. But the trial court rejected this argument and then this court rejected Ewing's argument. See *State v. Ewing*, No. 114,421, 2016 WL 1734911 (Kan. App. 2016) (unpublished opinion) (*Ewing II*).

In affirming the trial court's denial of Ewing's motion to correct illegal sentence, this court first noted that K.S.A. 1993 Supp. 21-4724(b)(l) allowed courts to convert only some indeterminate sentences to determinate sentences. *Ewing II*, 2016 WL 1734911, at *2. Specifically, it noted that K.S.A. 1993 Supp. 21-4742(b)(1) stated:

> "'Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, in grid blocks 5-H, 5-I or 6-G of the nondrug grid or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A.1993 Supp. 21-4705 and amendments thereto, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act.'" 2016 WL 1734911, at *2.

3

It then explained that Ewing's attempted aggravated robbery conviction in Reno County case No. 88CR604 prohibited the conversion of any of his indeterminate sentences, including his indeterminate sentence for his burglary conviction in Sedgwick County case No. 85CR1434, into determinate sentences under the KSGA grid:

"Ewing's 1993 sentencing guidelines report from the KDOC indicated that he had the KSGA equivalent of two pre-1993 person felonies and four pre-1993 nonperson felonies. The report concluded that, based on Ewing's criminal history, he was ineligible for retroactive conversion of any of the several listed sentences he was then serving, including the one in this case. Importantly, that report showed that in 1988, Ewing was convicted of attempted aggravated robbery, a fact Ewing overlooked or ignored in his motion. The report correctly noted that such an offense would be classified as a severity level 5 nondrug grid felony under the KSGA. Even if Ewing's pre-1993 felonies were all classified or reclassified as nonperson, that offense would still fall in grid block 5-E because Ewing had three or more prior nonperson felony convictions. The only nondrug grid level 5 offenders eligible for conversion were those whose offenses were in grid blocks 5-I or 5-H.

"Thus, Ewing's attempted aggravated robbery crime, under the KSGA, would have been classified in a presumptive imprisonment grid block. Because of that, none of Ewing's pre-KSGA sentences were eligible for conversion. 'If a defendant is ineligible for conversion on any crime for which he or she is serving a sentence, he or she is ineligible for retroactive application of the sentencing guidelines.' *State v. Lunsford*, 257 Kan. 508, Syl. ¶ 1, 894 P.2d 200 (1995). K.S.A.1993 Supp. 21-4724 did not provide for the piecemeal conversion of individual sentences Ewing argues he should have been granted. Accordingly, Ewing was, and is, ineligible for retroactive conversion under the KSGA of any of his indeterminate sentences. The district court did not err when it denied Ewing's motion." *Ewing II*, 2016 WL 1734911, at *2.

About two years after this court affirmed the denial of Ewing's motion to correct illegal sentence in Sedgwick County case No. 85CR1434, Ewing filed two pro se motions to correct illegal sentence in this case—Reno County case No. 88CR604. In those illegal sentence motions, Ewing asserted that his sentences in No. 88CR604 were illegal because

4

the KDOC wrongly aggregated his sentences for purposes of determining his minimum term of imprisonment before becoming parole eligible. That is, Ewing complained that the KDOC would not consider releasing him to parole until he served a minimum of 23 years' imprisonment, which was the sum of his minimum terms of imprisonment for his indeterminate aggravated burglary, attempted aggravated robbery, and obstruction of official duty sentences in No. 88CR604.

The trial court, however, summarily denied Ewing's motions for failing to raise a substantial issue of law or fact. In doing so, it explained that it had "no authority" to modify Ewing's sentences in No. 88CR604 because those sentences were legal when originally pronounced by the trial court.

Ewing appealed.

*Jurisdiction*

In its brief, although the State indicates that this court may not have jurisdiction, it does not explain why this court may lack jurisdiction over Ewing's appeal. Meanwhile, in his brief, Ewing never addresses this court's jurisdiction.

Even so, because the right to appeal to this court is entirely statutory, this court has jurisdiction to entertain an appeal only if that appeal was taken in the manner prescribed by the relevant statutes. See *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). This means that this court has a duty to question jurisdiction on its own initiative when the record on appeal reveals a potential jurisdictional problem. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Here, because the record reveals a potential jurisdiction problem, we sua sponte consider this problem exercising unlimited review. See *Smith*, 304 Kan. at 919 (holding that whether jurisdiction exists is a question of law over which this court exercises unlimited review).

5

Under K.S.A. 2020 Supp. 22-3504(a), "[t]he court may correct an illegal sentence at any time while the defendant is serving such sentence." But when a defendant makes an illegal sentence motion more than 14 days after sentencing, that illegal sentence motion is treated like a K.S.A. 60-1507 motion for procedural purposes. See *State v. Barnes*, 37 Kan. App. 2d 136, 138, 149 P.3d 543 (2007). Also, because K.S.A. 60-1507 motions are separate civil actions, a defendant moving to correct an illegal sentence via K.S.A. 60-1507 has 30 days following the denial of his or her motion to appeal the denial of his or her motion to this court. See K.S.A. 2020 Supp. 60-2103(a) (explaining that "the time within which an appeal may be taken shall be 30 days from the entry of judgment").

Next, it is important to point out that when considering the timeliness of certain filings, if the order from which the defendant is appealing was mailed to the defendant, the defendant is entitled to the benefit of the "three-day mail rule" stated under K.S.A. 2020 Supp. 60-206(d). Also, this court has previously applied the three-day mail rule when the timeliness of a defendant's appeal from the denial of his K.S.A. 60-1507 motion. *Wilson v. State*, 40 Kan. App. 2d 170, 175, 192 P.3d 1121 (2008). As a result, in cases where the trial court mails the order denying the defendant's motion to correct illegal sentence filed via K.S.A. 60-1507, the defendant has 33 days from the denial of his or her motion to correct illegal sentence to timely appeal to this court.

Turning to the facts of this case, we first note that it is undisputed that Ewing filed his motion to correct illegal sentence at issue here more than 14 days after his original sentencing in No. 88CR604 back in January 1989. As a result, although Ewing moved to correct an illegal sentence under K.S.A. 22-3504, this court treats Ewing's motion as a K.S.A. 60-1507 motion for procedural purposes. Thus, when the trial court denied Ewing's motion to correct illegal sentence on December 4, 2018, Ewing had 30 days to timely file his notice of appeal. See K.S.A. 2020 Supp. 60-2103(a). Thirty days from December 4, 2018, was Thursday, January 3, 2019. This means that with the benefit of

6

the three-day mail rule, Ewing had until Monday, January 7, 2019, to timely file his notice of appeal. See K.S.A. 2020 Supp. 60-206(a)(1) (explaining how to compute a procedural "time period" stated in days).

Here, nothing in the record on appeal indicates that the trial court mailed this order to Ewing. Yet, even if we assumed for argument sake that the three-day mail rule applied in Ewing's case, meaning Ewing's deadline to timely file his notice of appeal was Monday, January 7, 2019, Ewing did not file his notice of appeal until Thursday, January 10, 2019. Therefore, Ewing's notice of appeal was untimely.

At this juncture, we note that certain facts concerning when and how Ewing learned about the denial of his motion to correct illegal sentence are unclear. For instance, from our review of the record on appeal, it is unclear on what date Ewing learned about the denial of his illegal sentence motion. It is also unclear what method of service the trial court used to provide Ewing with notice of the denial of his illegal sentence motion. In addition, it is readily apparent that some delay between when the trial court denied Ewing's motion and when Ewing learned about the denial of his motion clearly occurred. This is apparent because more than three weeks after the trial court denied his illegal sentence motion, Ewing asked the trial court to hold a hearing on his illegal sentence motion.

Notwithstanding the preceding, we still hold that this court lacks jurisdiction over Ewing's appeal. If Ewing had any problems when and how he learned about the denial of his illegal sentence motion, then Ewing needed to explicitly raise those arguments in his appellant's brief. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding that an issue not raised by an appellant in his or her brief is deemed waived and abandoned). In his appellant's brief, however, Ewing never asserts that the trial court's service methods somehow prevented him from timely filing his notice of appeal. Clearly, by failing to argue that the trial court's service methods somehow prevented him from

timely filing his notice of appeal, Ewing has abandoned his ability to make such an argument. Thus, we presume the trial court's service methods were adequate and did not hinder Ewing's ability to timely file his notice of appeal.

Simply put, it would seem that we lack jurisdiction to consider Ewing's underlying arguments about why his sentences in No. 88CR604 are illegal.

*Arguments Otherwise Unpersuasive*

Even so, because the record indicates that there may have been some delay between when the trial court denied Ewing's illegal sentence motion and when Ewing learned about the denial of his illegal sentence motion, we note that Ewing's underlying arguments are fatally flawed.

Again, in his brief, Ewing argues that the trial court erred by denying his motion to correct illegal sentence for two reasons. In his first argument, Ewing asserts that the trial court erred by denying his motion to correct illegal sentence because the KDOC wrongly failed to convert his pre-KSGA indeterminate sentences to determinate sentences under the KSGA grid. Nevertheless, Ewing's argument is not properly before this court because he did not make this argument before the trial court. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (holding that an issue not raised below cannot be raised by an appellant for the first time on appeal). And notwithstanding this preservation problem, this court already rejected Ewing's first argument in *Ewing II*. Once again, in that case, this court held that Ewing was, and is, ineligible for the retroactive conversion of any of his pre-KSGA indeterminate sentences to determinate sentences under the KSGA grid because of the severity of his criminal history. 2016 WL 1734911, at *2.

Likewise, this court has already rejected Ewing's second argument. In his second argument, Ewing complains the KDOC wrongly aggregated his minimum terms of

8

imprisonment from his aggravated burglary (minimum 10 years' imprisonment), attempted aggravated robbery (minimum 10 years' imprisonment), and obstruction of official duty (minimum 3 years' imprisonment) sentences together to conclude that he must serve a minimum of 23 years' imprisonment before becoming parole eligible. Ewing asserts that KDOC erred by aggregating his minimum terms of imprisonment in this manner because by doing so, it impermissibly merged the identity of his punishment for his aggravated burglary, attempted aggravated robbery, and obstruction of official duty convictions together. Nonetheless, Ewing's argument ignores that this court already determined that his "sentences [in No. 88CR604] were within the statutory limits" in *Ewing I*, No. 63,620, slip op. at 13. See *State v. Parry*, 305 Kan. 1189, 1189, 390 P.3d 879 (2017) (holding that '[t]he law of the case doctrine prevents a party from relitigating an issue already decided on appeal in successive stages of the same proceeding").

Also, the plain language of K.S.A. 21-4608(f)(3) (Ensley 1988), which was in effect when Ewing committed his underlying crimes in 1988, explicitly stated that a defendant's aggregate minimum sentence is to be determined by the sum of his sentences' minimum terms. Specifically, K.S.A. 21-4608(f)(3) provided:

> "When indeterminate terms imposed on the same date are to be served consecutively, the minimum terms are added to arrive at an aggregate minimum to be served equal to the sum of all minimum terms and the maximum terms are added to arrive at an aggregate maximum equal to the sum of all maximum terms."

Thus, even if we ignored the fact that this court has already determined that Ewing's sentences in No. 88CR604 were legal, the plain language of K.S.A. 21-4608(f)(3) establishes that the KDOC did not err by aggregating his minimum terms of imprisonment from his aggravated burglary, his attempted aggravated robbery, and his obstruction of official duty sentences together to calculate his earliest possible parole date. See also *Price v. Simmons*, 31 Kan. App. 2d 631, 632, 71 P.3d 1164 (2002) (where this court held that the KDOC did not err by adding Price's maximum terms of

imprisonment for each of his sentences together to calculate Price's maximum aggregated prison sentence before becoming parole eligible).

*Conclusion*

So even if we have jurisdiction over Ewing's appeal, it is readily apparent that the trial court properly denied Ewing's illegal sentence motion because his underlying arguments are fatally flawed.

Affirmed.

* * *

ATCHESON, J., concurring: I concur in the result denying Kevin W. Ewing relief on his claim that his sentences have been improperly handled in a way adversely affecting his opportunity for conditional release from prison. I do so because the claims lack substantive merit essentially for the reasons outlined in the panel opinion. As for the jurisdictional issue, I do not see that the appellate record establishes a conclusive bar. Assuming Ewing's papers should be treated as a motion under K.S.A. 60-1507, I believe we would have to remand to the district court for an evidentiary hearing to resolve the point, while holding any consideration of the merits in abeyance.