NOT DESIGNATED FOR PUBLICATION

No. 122,363

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GABRIEL ESCOBAR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed December 17, 2021. Affirmed in part and dismissed in part.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HURST, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Gabriel Escobar appeals his conviction for aggravated indecent liberties with a child. He contends he was denied a fair trial due to prosecutorial error during closing argument. He also contends that the statute under which he was convicted is unconstitutional. Having thoroughly examined the record and Escobar's claims, we conclude that there was no prosecutorial error during his trial and he was not denied a fair trial. We affirm his conviction. Moreover, with respect to Escobar's constitutional challenge to the lack of mens rea in the relevant statute, he has no standing to raise it.

1

We need not recount all the events leading to this charge and Escobar's conviction. The parties are well acquainted with those facts. It suffices to say that Escobar and his four daughters had been living with mother (Mother) and her two children for many years. One of Mother's children was a 13-year-old girl (the Child) who was the object of Escobar's illicit attention. The Child viewed Escobar as her stepfather, though he and Mother never married.

On the evening in question, Escobar was on the couch in the living room watching Kansas play Duke in a March Madness basketball tournament game on television. The Child, who had been watching television, went upstairs to bed but later returned and sat on the couch, complaining that she was unable to sleep. Escobar put his hand underneath the Child's shirt to scratch her back to help her fall asleep. Once the Child fell asleep, Escobar fondled her breast and attempted to pull down her pants. When the Child reacted, Escobar quickly pulled up her pants and acted like he was simply watching television.

When the authorities ultimately learned of this incident, Escobar was arrested and charged with aggravated indecent liberties with a child. At trial, Escobar testified in his own defense and denied that he inappropriately touched the Child. He contended that if there was any inappropriate touching, it was simply by accident. Following his conviction, the district court departed from an off-grid sentence to a grid sentence of 59 months in prison followed by lifetime postrelease supervision. Escobar appeals.

*Prosecutorial Error*

Escobar contends that in closing argument the prosecutor impermissibly shifted the burden of proof to him, mischaracterized evidence, and appealed to the passions and prejudices of the jury. Though Escobar did not lodge an objection at the time, we can consider these claims on appeal. See *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

Prosecutorial error in closing argument occurs when the prosecutor's statements fall outside the wide latitude afforded prosecutors to conduct the State's case in an attempt to obtain a conviction in a manner that denies a defendant the constitutional right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Within the range of permissible conduct, the prosecutor can draw reasonable inferences that accurately reflect the evidence and accurately state the governing law. But such arguments may not be designed to inflame the passions of the jury or to otherwise divert the jury from its duty to decide the case on the controlling law as applied to the facts. On review, we consider any challenged argument in context and not in isolation; and if an error is found, we consider whether the error prejudiced the defendant's due process rights to a fair trial. A prosecutorial error is harmless if we are satisfied beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, i.e., that there is no reasonable possibility that the error contributed to the verdict. See *Bodine*, 313 Kan. at 406.

*Shifting the Burden of Proof*

During the State's rebuttal, the prosecutor stated the following while discussing the State's burden of proof.

"But the defendant, although he doesn't have the burden of proof, he also doesn't have to remain silent. He can make arguments and present evidence, as he has done in this case. And if the things that the defendant is saying, the evidence that he is presenting, is ridiculous or not believable, it should not give you a reasonable doubt as to his guilt."

The prosecutor then went on to discuss some of Escobar's theories of the case that, according to the prosecutor, failed to withstand rational scrutiny.

Escobar characterizes these comments as suggesting that by testifying, the burden shifted to Escobar to prove that his testimony created a reasonable doubt as to his guilt. We disagree. The prosecutor acknowledged that Escobar did not have the burden of proving his innocence. But having chosen to testify in a manner that contradicted the State's evidence, Escobar's testimony did not automatically establish reasonable doubt as to his guilt. Testimony which the jury finds to be "ridiculous or not believable" does not create reasonable doubt. This was not an improper argument. The prosecutor's remarks did not attempt to shift the burden of proof to Escobar.

*Mischaracterization of Evidence*

During rebuttal, the prosecutor stated the following in discussing the strength of Escobar's theory of the case:

> "The defendant argues that 'Well, this was a mistake, it was an accident, and if you're a sports fan you'll understand, because when you're watching a game and your hand is doing something, and you're focused on the game, right, you might end up squeezing a breast and not knowing what you're doing.' The State would submit to you that that should not create a reasonable doubt, because that's just ridiculous. There is no way, we would submit, reasonably, that a person, even if they're heavily invested in the outcome of a sports game could be sitting there squeezing a 13 year old breast and not knowing what is going on."

Later in his argument, the prosecutor discussed the consistency of the Child's testimony when compared to that of Escobar. The prosecutor noted that Escobar initially denied touching the Child's breast. But after the investigating detective presented the Child's account, Escobar conceded the possibility that he accidentally touched the Child's breast. In that context, the prosecutor argued:

4

"The defendant, on the other hand, comes in and when he's interviewed he says, '[N]o, back rub maybe, but no touching.' Then after the detective sets forth the case that he has, he says, '[O]kay, well, maybe it was an accident.' 'You know, I'm a sports fan, you know how you get, right? Your hand wanders, you touch a 13 year old's breast. So that might have been an accident.'"

Escobar argues that the quotations in these portions of the prosecutor's argument that are supposedly direct quotes of Escobar's testimony are misstatements of his testimony.

The prosecutor's statements about Escobar's testimony were not prefaced by the phrase "and I quote" or some similar statement that would indicate that these were direct quotes from the testimony. The quotation marks were inserted by the court reporter, not the prosecutor. The prosecutor was simply summarizing the defense theory. The proper focus should be on whether the prosecutor's statement of Escobar's position is a fair characterization.

Escobar testified that he wanted to watch the Kansas-Duke basketball game he had recorded. During his interview with the investigating detective, Escobar admitted that he might have touched the Child's breast accidentally because he was so absorbed in watching the basketball game. Escobar denied the improper touching but contended that if he did so it was not done consciously or intentionally. The prosecutor's characterization of Escobar's defense was not unfair.

*Inflaming the Passions and Prejudices of the Jury*

Escobar contends the prosecutor inflamed the passions and prejudices of the jury by suggesting that Escobar's decision to end a long-term relationship with Mother instead of apologizing to the Child is evidence of Escobar's consciousness of guilt.

5

In addressing Escobar's decision to leave the home after finding out about the Child's accusation, his counsel stated in closing:

> "They say he's guilty because he left. He got up, heard what he was being accused of, packed his things and left.
>
>     . . . .
>
>     ". . . Mr. Escobar was damned if he did or damned if he don't. He was told [the Child] didn't want to come home and so he said, '[T]his can't end good. I'm leaving.' And that's what he did."

In rebuttal, the prosecutor countered:

>     "The defendant argues as far as this issue about his leaving the house is concerned, that the State is saying he's damned if he does, he's damned if he doesn't. That's not the point. There are some pieces of evidence which might be subject to two different interpretations. For example, you can say look, I understand [the Child] says this and he wants to move out of the house. I understand he feels unsafe, he feels threatened, and that might have been what had happened. But the State submits that there is . . . another interpretation of that evidence which is more reasonable when you look at all of the evidence. . . .
>
>     ". . . [T]he more reasonable interpretation of this evidence . . . is . . . after the defendant has squeezed [the Child's] breast, he gets a phone call that indicates [the Child] knew about it. She's talking about it. She's telling people. Oh, no, I'm in trouble. I'm out. And that shows a guilty state of mind, which supports the State's theory that the defendant is guilty of the crime. So it's not damned if you do, damned if you don't.
>
>     . . . .
>
>     ". . . If the defendant in that interview with Detective Mink had really believed that it might have been an accident, don't you think—don't you think it's reasonable that rather than ash-canning a six year relationship in which he was in love with [Mother] and very close with his family, don't you think before he packed up all his stuff and moved

6

out like a guilty person does, he might have at the very least had the courtesy to go to [the Child] and say, 'I'm sorry.' 'I didn't mean to do that, that was an accident.' 'I accidentally touched you.' Don't you think you would try to repair the family in that way? But he didn't. And the State submits that he didn't and the way he didn't, that is moving out of the house, shows that he knew exactly what he had done."

As the prosecutor candidly admitted, the circumstances of Escobar leaving Mother's house are capable of more than one interpretation. The prosecutor's comments were designed to draw inferences from those circumstances that support the State's theory of the case and to appeal to the jurors' common sense and experience about how an individual in Escobar's position might have reacted under these circumstances. The fact that an innocent person might act in a myriad of ways when confronted with an allegation of sexual abuse of a child does not diminish the State's freedom to argue that the way Escobar acted suggested his consciousness of guilt. The jury was free to accept or reject the inferences the prosecutor wished them to draw. These statements in the prosecutor's rebuttal did not exceed the scope of permissible argument based on the evidence presented at trial.

*The Constitutionality of K.S.A. 2020 Supp. 21-5506(b)(3)(A)*

Under K.S.A. 2020 Supp. 21-5506(b)(3)(A), aggravated indecent liberties with a child is

"engaging in any of the following acts with a child who is under 14 years of age:
"(A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or satisfy the sexual desires of either the child or the offender, or both."

Escobar contends that this statute is unconstitutional because it fails to require the State to prove that the defendant had knowledge of the victim's age, a mens rea which is a

7

requirement for every crime which the State must prove in every criminal trial. Thus, Escobar contends the statute violates his right to trial by jury and his right to substantive due process guaranteed by the Kansas Constitution Bill of Rights.

Aside from the preservation rule found in *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020)—the general requirement that a party raising a constitutional issue on appeal must have first raised it before the district court—there is a more fundamental requirement that a party have standing to challenge the constitutionality of a statute.

The Kansas Supreme Court has characterized standing as jurisdictional. See *State v. Stoll*, 312 Kan. 726, 734, 480 P.3d 158 (2021). We have the duty to consider jurisdictional issues on our own initiative if not raised by the parties. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). To that end, we invited the parties to submit supplemental briefs on the issue of standing and they have done so.

The existence of standing is a question of law over which our review is unlimited. *Stoll*, 312 Kan. at 734 (citing *Sierra Club v. Mosier*, 298 Kan. 22, 29, 310 P.3d 360 [2013]). Standing requires a cognizable legal injury and a causal connection between the injury and the challenged conduct. *Stoll*, 312 Kan. at 734. Here, the burden is on Escobar to establish that he has standing to assert his claim for relief. See *Sierra Club*, 298 Kan. at 33.

In *Stoll*, the defendant was convicted of failing to register as an offender under the Kansas Offender Registration Act (KORA). Stoll argued that KORA's penalty provisions violated her substantive due process rights because KORA lacked a mens rea requirement. She contended that she did not have a culpable mental state. Rather, she knew she had to register but "had a lot going on at the time" and simply missed the three-day registration deadline to update her address. 312 Kan. at 728. The district court found that the offense did not require a culpable mental state and convicted her of failing to

8

register. On appeal, Stoll argued that the provision of KORA that made failure to register a strict liability crime was an unconstitutional deprivation of her substantive due process rights. On appeal, our Supreme Court concluded that she had no standing to challenge the statute because the constitutional defect she claimed had no effect on her conviction. 312 Kan. at 735.

Here, Escobar challenges the statute for its lack of a requirement that the defendant knew at the time that the Child with whom he took aggravated indecent liberties was under the age of 14. But he does not contend that he did not know the Child was under age 14. After all, he had been a member of the household since the Child was seven years of age. The crime here occurred when the Child was 13 years of age. He considered the Child to be like his own daughter. The Child considered Escobar to be her stepfather. He does not contend that he was under the misapprehension that the Child was 14 years of age or older at the time of this incident. Escobar has not shown any circumstance that would have potentially produced a different result at trial if the State had been required to prove that Escobar knew the Child was under 14 years of age. As in *Stoll*, Escobar lacks standing to assert these claims because there is no causal connection between his conviction and the statute's lack of a requirement that a defendant knows the victim's age. The allegedly unconstitutional condition—the statute relieving the State of its burden to prove that Escobar knew the Child's age—is causally unconnected to the harm Escobar has suffered, i.e., being punished for lewd fondling or touching of the Child. Accordingly, Escobar's constitutional challenges are dismissed for lack of jurisdiction.

Affirmed in part and dismissed in part.